JAMES T. ROBERTS, plaintiff in error, *vs.* JAMES MANS-
FIELD, defendant in error.

Where A is the owner of two promissory notes, due at different times,
and of a mortgage on real estate securing them, and transfers one of
the notes to B, entering, at the time, into a written contract that he,
in a specified time, would transfer to B and his assigns, the mortgage to
secure the note, and B transfers the note and agreement, the note still
being not due to C, and A afterwards refuses to transfer to C the mort-
gage, except upon conditions, which C is not bound to accept:

*Held,* That though A still had the legal title to the mortgage, he held it for
C's use, and, if by the use of that mortgage, he collects, out of the prop-
erty morgaged, money sufficient to discharge C's note, C may recover
the same from A.

Equity.    Transfer of mortgage.    Tried before JAMES M.
CLARK.    Mitchell Superior Court.    November Term, 1868.

On the 1st of August, 1853, three men, named Faircloth,
made and delivered to James Mansfield, their two promis-
sory notes, for $1,000 00 each, payable to Mansfield or
bearer, with interest from date, due on the 1st of January,
1855, and the 1st of January, 1856, respectively.    At the
same time, they delivered to him their mortgage on certain
lands, to secure the payment of said notes.    The mortgage
was duly recorded.    On the 31st of August, 1853, Mansfield
transferred said mortgage to William H. Watson, without
recourse on Mansfield.    On the 1st of May, 1854, he also
delivered the note due on the 1st of January, 1856, and a
paper in the following words, to one Jno. N. Pate :

"GEORGIA, DOUGHERTY, COUNTY.
"Whereas, I have this day (sold) to Jesse Pate, a promissory note on
Wm. M. Faircloth, David Faircloth and Riley Faircloth, for the sum of
one thousand dollars, dated the 1st of August, 1853, and due on the first
of January, 1856, payable to me, or bearer, which is secured to me by
mortgage on" (here follows a description of the land) "which said
mortgage I do hereby agree to have transferred to said Pate, before said
note falls due, for the purpose of securing the payment of said note to
said Pate, his heirs or assigns.
"Witness, my hand and seal, this 1st May, 1854.
JAMES MANSFIELD. [L. S.].''

On the 6th of January, 1855, Watson re-delivered said first note, and re-conveyed said mortgage to said Mansfield. He then sued the makers thereon, obtained his judgment on the 15th of December, 1855, had the mortgaged premises levied on by the *fi. fa.* founded on said common law judgment, and the same was sold in March, 1856, to one Cheever, at sheriff's sale, for $1135 00. The *fi. fa.* was then paid off, (the balance of the fund being paid to the defendants in *fi. fa.*)

In 1858, Roberts brought his action against Mansfield, averring said facts, that he was the assignee of Jesse Pate, *bona fide*, for value, and before said second note and agreement was due, and without knowledge of the first note, or of anything to make him doubt the perfect security of said second note, that the makers were insolvent, and that said Mansfield, by selling said land, as aforesaid, and especially by giving notice at the sale, that the purchaser would get an unencumbered title, had caused him to lose said demand, and praying judgment against Mansfield, for the amount of said second note. Thereupon, Mansfield filed his bill, averring that he transferred to John N. Pate, (who, by mistake, was called Jesse Pate in the contract,) as agent for one Treadwell, said note, and delivered to him said promise to transfer said mortgage, in consideration that Pate, as such agent, would credit a note which Treadwell had against Mansfield with $125 00, and had given him a note on Treadwell for $330 00, due 1st October, 1854, which was to be discharged by three other wagons; that, at the date of the trade with Pate, he informed him of the first note being transferred to Watson, and that he had transferred the mortgage to Watson to secure said note, and that for that reason he could not then transfer it to him; that it was expressly understood that the security of the first note was a right prior to the security of the second, and was not to be injuriously affected by the transfer to Pate, but that he was to buy back the mortgage from Watson, and hold it first for the security of the first note, and then transfer it for the security of the other.

He stated that Treadwell did not give him said credit of $125 00, but sold his note before it was due, and he had

been compelled to pay it; that, honestly intending to carry out his contract, on the 17th of December, 1855, having, at great expense, gotten back the mortgage, he offered to transfer the mortgage to Treadwell, and tendered such a transfer to R. F. Lyon, attorney-at-law for said Roberts; that he could not at law set up this defense against Roberts, nor then prove anything inconsistent with the writing aforesaid, and yet he ought to be paid said $125 00 and said $330 00 notes, with the interest on each, and he prayed injunction against Roberts's said action till said writing was reformed, so as to carry out the real agreement, etc., and that Treadwell and Roberts should answer touching said premises. The injunction was granted, and the bill was served on Roberts and Treadwell. Treadwell answered, admitting that Pate took the note and transfer, as his agent, and gave a note on him for $330 00, as the difference between the wagons, etc., sold, and the Faircloth note, but he never heard from Pate anything else as to said trade, nor knew anything else about it, except as to said $330 00 note, and what appeared in the said written transfer; that he did sell Mansfield's note without having put any credit on it, but knew not that any was to have been put on it till Pate told him so, long after he had sold it, and it had been sued on; he said that Pate was insolvent and gone; he himself was insolvent now, but would have paid said $330 00 note, had it been presented when he was good; that he has no interest directly or indirectly, in the Roberts action; that in a few days after Pate had delivered them to him, he sold to Roberts said note and transfer for full value, in a due course of trade, and without knowledge or suspicion by either that there was any defense to the paper.

ROBERTS answered, saying he knew naught of the matters aforesaid, except that before said note was due, and with the full belief that it was good, he gave Treadwell a negro woman, worth $650 00, and the balance in cash, for said note and agreement. The parties went to trial on this common law action and the bill in equity together. Plaintiff read, in evidence, the note and writing which were taken by

Roberts *vs.* Mansfield.

Pate, the original mortgage and said transfer of 31st August, 1853, and retransfer of 6th January, 1855, and said first note attached to the mortgage. There was on the mortgage, also, a transfer, as follows:

" For value received, I do hereby transfer and assign the within mortgage deed unto H. Treadwell, for the purpose of securing the last promissory note therein specified. I retain my right to hold said mortgage to secure the payment of the first note therein described, which said transfer is made without any recourse or liability on myself, my heirs and assigns, this 17th December, 1855.

JAMES MANSFIELD. [L. S.]

This last transfer plaintiff's attorneys did not read in evidence. Plaintiff also read, in evidence, said common law action, and the *fi. fa.* showing said sale and disposition of the proceeds of said land. Plaintiff's attorneys also read, in evidence, an agreed state of facts, by which it was admitted that this was the mortgaged land; that at and before said sale, R. F. Lyon stated that, as attorney of James T. Roberts, he held the agreement of Mansfield to transfer said mortgage to secure said $1,000 00 note, before the first of January last, before the sale, and that Mansfield, on demand, had refused to make the transfer; that David A. Vason then stated, that Mansfield had agreed to transfer the mortgage, as he understood and made the contract, but that Lyon had refused to take it, because it was not in compliance with the written agreement to tranfer; that this *fi. fa.* was founded upon the first note specified in the mortgage, and that he was satisfied that the purchaser, at said sale, would get a perfect title and get the land free from said mortgage. In doing this, Vason was representing said Watson and said Mansfield, (Watson having about $700 00 in said *fi. fa.*, and the balance of it belonging to Mansfield,) and was then, also, attorney for Mansfield in this litigation; Vason bid for the land, and ran it up to the amount of the *fi. fa.*; it brought more, and the balance was paid to the defendants in *fi. fa.*, under an order of Court. Lyon did not state that he was authorized to waive his lien, but the contrary; nor did he do so; he only stated that he was employed to sue Mansfield for

the money, for refusing to transfer the mortgage, as he had ·agreed. Vason may have created the impression that the title would be good to the purchaser under the sale, but to those to whom he gave his reasons, he stated that Lyon's refusal of the proffered transfer was a waiver of his client's right to control the mortgage against the land after this sale, (he meant said transfer of 17th December, 1855) ; that Lyon was the attorney of Treadwell, and said offer was made after Lyon, as attorney for Roberts, had demanded the transfer to him, according to the written contract ; and further, that the Faircloths were insolvent, and the only security for the note was the land.

R. F. LYON testified that he received said note and agreement of Mansfield from Roberts, for collection, and called on Mansfield for the transfer of the mortgage. Mansfield refused to make such a transfer as the writing called for, but, soon afterwards, tendered the one dated 17th December, 1855, which Lyon would not take, because it was not in conformity to the writing. Said John N. Pate, by interrogatories, showed that the trade and understanding between him and Mansfield was in substance as set out in Mansfield's bill, and further, that he told Treadwell, as to the $125 00 credit, but the note on which it was to have been placed, having been traded off, and Treadwell having directed him to get up the note, and make the credit, he failed to do so during the two months that he stayed with Treadwell.

MANSFIELD testified that he offered to Lyon said transfer of 17th December, 1855, on the same day of Lyon's demand, and just after the demand, which was made on that day. The defendant read in evidence said transfer.

The evidence being closed, the Court charged the jury. After stating the case, that they might understand it fully, he proceeded as follows : " Whatever may have been the agreement or understanding between Mansfield and Pate, or Treadwell, differing from the written agreement, said agreement or understanding does not bind Roberts, unless notice is brought home to him. The mortgage was transferred to Roberts by operation of law ; was an incident to, and followed, the note

in the hands of the purchaser.  The law having vested the right to the mortgage in Roberts, he had the legal right to foreclose the same, or otherwise assert his lien on the mortgage property.  It was his duty, on the day of sale, to have given notice to purchasers of his mortgage lien ; if he gave notice, then the lien continued, and followed the property in the hands of the purchaser.  If he failed to give notice, then he is in *laches,* he loses his lien, and the purchaser gets a clear title.

" The defendant is bound by his contract, according to its terms, and while the law transfers the mortgage lien to Roberts, yet, the defendant is bound to fulfill his contract, and, if any damage resulted to plaintiff by his failure to do so, he is liable for the damage.  If the failure or refusal caused the plaintiff to lose his lien, or otherwise his debt on the Faircloths, then the measure of damages is the note and interest. But if the failure or refusal caused no special damage, and the plaintiff was in as good condition after as before refusal, then he can not recover, unless he shows some special, actual, damage."

The verdict was for the defendant.  The plaintiff in error says the whole charge is erroneous, and especially that part of it as to the transfer of the mortgage to Roberts by operation of law.

R. F. LYON for plaintiff in error.

VASON & DAVIS for defendant in error.

Roberts *vs.* Mansfield.

McCay, J.

The error of the Court in this case, consists in the follow-lowing charge to the jury : "It was his (Mansfield's) duty to give notice of his rights at the day of sale. If he did not do this, he is in *laches*, and can not recover, if he did, then his lien continued and followed the property." In effect, this was a charge that the plaintiff could not recover. Failure to give notice, puts him in *laches;* giving notice, turns him *off* the defendant *on* the land.

There are two views of this case, in either of which, if the jury find the facts, as under the proof they might, the defendant is liable to the plaintiff below.

The plaintiff ought not to be heard in denial of his public declarations on the day of the sale. He was the nominal holder of the mortgage, and, at the sale, he publicly proclaimed that it was still his, and that the purchaser would get a good title against it. He now proposes, in effect, to deny this ; and that after he has got the benefit of it, and misled, by his solemn act, the purchaser at the sale. He cannot be allowed thus to trifle with the rights of others, and, by permitting him to set up this defense, he turns the plaintiff, perhaps successfully, against the purchaser, who bought on his faith in his (Faircloth's) satements. Greenleaf Ev., sec. 207, 209.

But there is another view of it. Assuming the facts to be as Mansfield claims, and there is evidence on which a jury might so find, Faircloth held the title to the mortgage, as trustee for Mansfield. Whilst so holding it, he agrees, at a sale, under a *fi. fa.* for a part of the same debt, that the purchaser at the sale will get a good title against the mortgage. In other words, he uses the mortgage for his own benefit, and, by that use, he secures a bidder to the amount of his debt.

Now, it is well settled, that when a trustee uses the property of the trust, for his own benefit, that the true owner is not compelled to follow the property, even though he might be able, by proving notice, to follow it successfully. He has

his option, in such a case, to sue the trustee, or follow the property.

It would be monstrous to permit the trustee, in such cases, to say : "Yes, I have used the trust property; I have got the benefit of that use, but you can prove that the party now in possession had notice of your claim. He trusted, it is true, to my statements, but he ought to have known me better. Your remedy is on him."

The rule is well established, that the *cestui que trust* may sue the trustee, even though it appear that he has a right also to sue the person dealing with the trustee. 2 Story's Equity, sec. 1262 ; Dacker vs. Soames, 2 Mylne & K., 655.