## Joshua Bennett *vs.* William H. Clemence & another.

An answer to an action of tort in the nature of trespass *quare clausum*, by denying that the defendant entered the plaintiff's close, as described in the plaintiff's writ, puts the plaintiff's title in issue.

Requiring a party who puts in a deed, to introduce at the same time a plan referred to therein furnishes no ground of exception.

In 1826, the commissioners of highways adjudged that "an alteration in the road from the Central Bridge to P." was of common convenience and necessity, and their record described the road by courses and distances in part over lands of certain persons named and in part "over old road." In 1827, on a petition for an alteration in the highway located in 1826, but not now worked, they adjudged the alteration to be of common convenience and necessity, and described it by lines and boundaries in part "over road as formerly laid out in" 1826, "and said commissioners adjudge that all that part of the road by them located in 1826," between certain points described, "be and the same is hereby discontinued." In 1853 and 1854, upon a petition to define the boundaries of this road and locate it anew, the county commissioners described a new location very exactly by metes and bounds. *Held,* that evidence of these proceedings, with evidence that the old way had not been travelled upon since 1826, excepting that up to 1839 it was used by persons crossing the river in winter upon the ice, and since then by persons driving cattle to drink, showed a discontinuance of the old way.

The plaintiff in an action of tort in the nature of trespass *quare clausum* may testify how long his use and occupation of the premises have continued.

The objection that a question to a witness was leading cannot be taken for the first time at the argument in this court on exceptions.

In an action of tort for breaking and entering the plaintiff's close and tearing down his unfinished building, he cannot be allowed to show, for the purpose of proving damages, what the building would have cost, or rented for, if it had been finished according to the plan.

The opinion of a witness as to which of two deeds conveys the greater right is incompetent.

County commissioners have no authority to discontinue a public landing; and the alteration of a way by the substitution of a new one therefor has not the effect to discontinue the old way, if the same is necessary to furnish access to a public landing, or can reasonably be considered as appurtenant thereto.

For the purpose of proving that an existing way has not been discontinued by the substitution of a new way therefor, evidence is competent to prove the existence of a public

Bennett *v.* Clemence & another.

landing, to which the way furnishes a necessary access, or can reasonably be considered as appurtenant.

Erecting a building upon a portion of land held in common, by one of the tenants in common, is such an exclusive appropriation thereof to his own use as to amount to an ouster of his co-tenant; and will entitle the latter to maintain an action for the trespass, or to remove the building.

TORT for breaking and entering the plaintiff's close in Lowell, (described in the writ,) and tearing down, carrying away and destroying an unfinished wooden building there being, and converting the same to the defendants' use.

The defendants in their answer "deny upon their personal knowledge that they entered the plaintiff's close, as described in the plaintiff's writ, and tore down and destroyed a new wooden building belonging to the plaintiff, and converted the same to their own use.

" And the defendants further answer that if any act of theirs shall be proved by the plaintiff in connection with the defacing or injuring the plaintiff's building, the said building was located by the plaintiff or his order upon a street or public highway within the city of Lowell; and whatever was done by the defendants was done by order of the city authorities to remove an obstruction to said street or public highway and to abate the nuisance."

At the trial in the court of common pleas in Middlesex, at March term 1858, before *Perkins*, J., the plaintiff contended that the answer did not deny his title so as to oblige him to furnish any evidence of it. But the judge ruled that the answer did not admit the plaintiff's title, and that he must show such title as was necessary to sustain this action.

The plaintiff, in proof of his title, introduced a deed of the premises made to himself in 1833, which stated that the descriptions therein were made according to a certain plan to which it referred. The defendants objected that as the deed referred to a plan, it was necessary that the plan should be produced, before proceeding further with the location of said deed. And the court ruled "that said plan, being referred to in the deed, became so far connected with it that it must be produced as a part of the proof in determining the situation upon the face of the earth

of the premises conveyed." To this ruling the plaintiff excepted.

The plaintiff, for the purpose of proving that this part of said highway had been discontinued, introduced a record of the commissioners of highways in December 1826, on a petition for " a road from the north end of the Central Bridge to Pelham, in a direction from the Pelham meeting-house through the town of Dracut," upon which the commissioners " adjudge that an alteration in the road from the Central Bridge to Pelham line through the town of Dracut, in a direction from Pelham meeting-house, is of common convenience and necessity," and described the road by courses and distances in part over lands of certain persons named, and in part " over old road;" " the said highway is to be three rods in width on the easterly side of said line in every part except " at a point not material to this case. " And it is considered by the said commissioners that the highway herein described and located be, and the same is hereby, established as a public highway, a plan of which is hereto annexed;" but no plan was annexed to the copy. It was objected by the defendants that this copy could not go the jury without the plan or a copy of it being produced, and so the court ruled. And upon the reassembling of the court at a subsequent time the plaintiff produced the original report of the commissioners, with said plan annexed.

The plaintiff also introduced the record of said commissioners in 1827, on a petition " praying for an alteration of the highway in Dracut, from the Central Bridge to Dracut meeting-house, which was located in December last, but now not worked," upon which " it is considered and adjudged by said commissioners that the alteration hereinafter described is of common convenience and necessity," and described the road more particularly by lines and boundaries, in part " over road as formerly laid out," and " as located in December last," " said road to be three rods wide from the first mentioned boundary to the north side of land belonging to the Central Bridge Corporation, being thus far precisely as heretofore located, and four rods wide from that point to the intersection of" a certain other

road; "embracing within its limits a town road of about three
rods in width, and from said road three rods in width to the last
mentioned bound, said road to be on the easterly side of said
lines and boundaries." "And said commissioners adjudge that
all that part of the road by them located in December A. D
1826, from the abutment of the Central Bridge to the point
where the above location intersects with that made as aforesaid,
and lying west of the said location, be and the same is hereby
discontinued; and it is further considered by said commissioners
that said new highway or alteration thus laid out and described
be and the same is hereby established as and for a public high-
way." This record made no other allusion to any plan than
by reference to said former laying out, which did refer to a
plan. The defendants objected that this copy could not be
introduced, in consequence of its reference to the road as pre-
viously laid out, until proof of the first laying out was intro-
duced; and so the court ruled. And the original location
having been read as above stated, this paper was also read in
evidence.

The plaintiff also introduced a record of the county commis-
sioners, showing that, in 1854, upon a petition to them " to de-
fine the boundaries of that part of the county road within said
city running north from Central Bridge to the boundary line
between said city and the town of Dracut, known by the name
of Bridge Street," and praying them " to locate anew said road
for the purpose of establishing the boundary lines thereof," they
adjudged that " said new location is of common convenience
and necessity," and described it very exactly by metes, bounds
and monuments, both on the easterly and westerly sides of the
street; which limits exclude the *locus.*

The defendants introduced a copy from the records of the
town of Dracut, laying out a highway from Lieutenant Rich-
ardson's to Hunt's Ferry, two rods wide, in 1735; " also evi-
dence tending to show that this old way formerly ran over the
*locus in quo,* whereon the west end of the building — all that
part cut off — was placed; and that it was constantly used and
actually travelled upon as a way until the erection of Central

Bridge in 1826 ; and that persons travelling to Lowell in winter sometimes used the same way over the ice until 1839, when that travel ceased; that persons since that time have driven their cattle and horses down to the river to drink at this place; that within twenty years drift wood has been taken ashore at the terminal point of said old highway, and left to dry upon a portion of the old way where Front Street is now located."

The plaintiff requested the court to instruct the jury that the location of the county road in 1827 and 1828, embracing as it did parts of the old town way, and altering the same, and the new location of the highway in 1854, amounted to a discontinuance of the old way ; but the judge declined so to rule.

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions, which were argued in January 1859.

*T. Wentworth*, for the plaintiff, cited, as to the discontinuance of the way, Rev. Sts. *c.* 24, § 69; *Hadley* v. *County Commissioners*, 11 Cush. 394; *Johnson* v. *Wyman*, 9 Gray, 186, and cases cited; *Tyler* v. *Hammond*, 11 Pick. 193.

*B. F. Butler*, for the defendants.

The following decision was made in January 1860.

BY THE COURT. 1. The defendants in their answer "deny upon their personal knowledge that they entered the plaintiff's close, as described in the plaintiff's writ." This distinctly met the plaintiff's allegations, and obliged the plaintiff to show some title in order to maintain his action.

2. A plan referred to in a deed or record, if in the control of the party introducing the deed or record, may justly be required to be read together with it. The plaintiff's exception on this point concerns the order of introducing his evidence, which is within the discretion of the presiding judge.

3. Whatever might have been the effect of the alterations in the highway in 1826 and 1827, if they had stood alone, the court are of opinion that by the record of 1854 and the practical abandonment of the old way as shown by the evidence introduced by the defendants themselves, it is clear that the new way was intended to supersede the old one, the necessity for the old way having ceased, and that the old way must be deemed to

have been discontinued eastwardly of the eastern limits fixed by the record of 1854. *Exceptions sustained.*

After the former decision, the defendants obtained leave to file an additional answer, to ·which the plaintiff demurred, and an appeal from the decision of the superior court, sustaining the demurrer, was dismissed in this court for irregularity in taking it. 3 Allen, 431.

After the decision in 3 Allen, 431, a new trial was had in the superior court, at March term 1862, before *Brigham*, J., in which various questions of evidence arose, which are sufficiently stated in the opinion. For the purpose of establishing the continued existence of the way over the *locus*, the defendants offered to prove that in 1819 the way led to a public landing place upon the bank of the river, and that this extended back as far as the *locus;* but the judge rejected the evidence, and ruled that no evidence was admissible of the use of the premises prior to 1828 as a way or public landing, but that the proceedings of the commissioners in that year, laying out the county road to Central Bridge, discontinued the town way for a way, and for all the uses which the public had acquired in the same or any part thereof, including that of a public landing, or way to a public landing.

The defendants then introduced evidence that after 1828 the owners of the fee in the way dedicated the same to the public, as a public landing, common and way, and that the public, by using the same for these purposes from 1828 to 1856, had acquired a right so to use it. They also offered to prove that the town of Dracut, prior to its annexation and as late as 1845, exercised acts of control over the *locus* as part of their public ways, by appointing a committee to take charge of the same, who caused a person who had incumbered the same to be prosecuted by indictment; but this evidence was rejected.

To prove that one of the defendants, Brown, had a private right of way over the premises, various deeds were introduced, which the judge ruled conferred no right upon him to enter upon the *locus*

The defendants introduced evidence tending to establish a tenancy in common of the premises by the plaintiff and the defendant Brown; and they contended that, if this was estab lished, they were not liable in this action for the removal of any part of the building. But the judge ruled that the plaintiff might, upon his present declaration, recover for the removal of the building, although he might not prove the breaking and er. tering.

And in charging the jury, the judge instructed them, amongs other things, that the proceedings of the county commissioners in 1828, taken in connection with their proceedings in 1827, operated to discontinue the old road; that the evidence introduced for that purpose was sufficient to establish a tenancy in common of the *locus*, between the plaintiff and the defendant Brown; that Brown, as tenant in common, had a right to enter upon the common land, but had no right to destroy or remove the property of his co-tenant, and cannot justify any forcible acts in which he participated, in the destruction or removal of the plaintiff's building, under his right as tenant in common; and that the defendant Clemence cannot justify his participation in such acts of destruction or removal under any authority from Brown, in the exercise of his private right.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*W. P. Webster & A. R. Brown,* for the defendants, cited, as to the right to discontinue a public landing place, *Commonwealth* v. *Tucker,* 2 Pick. 44; and as to the right of a tenant in common to remove a permanent structure erected by his co-tenant upon the premises held in common, *Bliss* v. *Rice,* 17 Pick. 36; *Parker* v. *Proprietors of Locks & Canals,* 3 Met. 91, 100; *Shumway* v. *Holbrook,* 1 Pick. 114; *Keay* v. *Goodwin,* 16 Mass. 1.

*T. Wentworth,* for the plaintiff.

CHAPMAN, J. 1. The first exception must be overruled. This being an action of tort, for breaking and entering the plaintiff's close, he being a witness on the stand and competent to testify, and the fact of his own prior use and occupation being pertinent as

tending to establish his title, it was proper for his counsel who was conducting the cause to ask him questions on that point. The plaintiff was asked " how long he had been in the use and occupation of the *locus.*" It is objected in argument that this question was leading ; but the objection does not appear to have been made at the trial, and therefore cannot be urged here.

2. The second exception must be sustained. The act complained of by the plaintiff was the cutting down of a part of an unfinished building. The question which was allowed to be put and answered was, what the building would rent for annually when finished according to the plan. If the plaintiff had a right to recover damages, it was for the injury done to his building as it then was ; and an opinion as to what it would rent for in a condition of things which did not exist would be sanctioned by no rule of evidence, and would tend to mislead the jury.

3. The third exception must be sustained, and for the same reason as the second, the question being what the building would cost when finished.

4. The fourth exception must be overruled. The plaintiff was on the stand, and had testified as to land conveyed by two deeds, which were read. The defendants' counsel asked him if one of the deeds referred to conveyed any greater right than another of the deeds referred to. This was a question of law, to be determined by the legal construction of the instruments, and not by the oral testimony of the witness.

5. The fifth exception must be sustained. The important point decided by the judge was, that the proceedings of the county commissioners, locating the highway to the bridge, being an alteration of the town way which had before existed to the river, had the effect to discontinue that part of the old way for which the new way was substituted, not only as a public way, but for all the uses which the public had acquired in any part of it, including that of a public landing. It is, in general, true that an alteration of a public way has the effect to discontinue that part of the old way for which the new one is substituted. But no authority has ever been given to the county commissioners

to discontinue a public landing. Such landings have existed and been recognized by law from the earliest existence of the state. They are recognized in Gen. Sts. *c.* 46, § 1, and this is but a reënactment of earlier statutes. The court are of opinion that the landing place in question was not discontinued by the proceedings of the county commissioners. And if the way leading to it was necessary to furnish access to it, or can reasonably be considered as appurtenant to it, as a landing place for the use of the public, the way cannot be regarded as discontinued.*

6. All the evidence offered, which tended to prove the existence of a public landing, including the acts of the town of Dracut, should have been admitted.

7. Whether the defendant Brown had a private right of way over the premises, under the deeds referred to, can only be ascertained by an examination of the deeds. And as they are not among the papers furnished to the court, this question cannot be decided. It may not be material.

8. The only remaining question that appears to be important relates to the rights of the parties as tenants in common. The bill of exceptions does not clearly state the situation of the plaintiff's building. But by the plan the principal part of the building appears to have stood upon the land of the plaintiff adjoining the *locus*, of which the defendant Brown claims to be tenant in common with the plaintiff. A small portion of it was placed on the *locus*, but not enough to be used separately with any advantage to the occupant. Such an exclusive appropriation of a part of the land to his own use, by the erection of a permanent structure, would be evidence of an ouster of his co-tenant. Such an ouster is a trespass, for which an action of trespass may be maintained. *Stedman* v. *Smith,* 8 El. & Bl. 1. *Erwin* v. *Olmsted,* 7 Cow. 229. It has been said that an action of trespass *quare clausum* cannot be maintained by one tenant in common against another. The objection is merely technical. It is fully discussed in *Maddox* v. *Goddard,* 15 Maine,

---

* For the authorities as to public landing places, see 9 Gray, 527.

218, and it is there held that it will lie for the destruction of a mill situated on the common property, and the cases above referred to establish the point that it will lie for an ouster. An exclusive occupation of a part of the land for a temporary purpose, such as piling boards and lumber, not being an ouster, does not make the tenant liable to any action. *Keay* v. *Goodwin*, 16 Mass. 1.

If Brown might have maintained trespass for the illegal erection of a part of the building on the common land, it would seem that he might resort to the more speedy remedy of removing it. This was taken for granted in *Stedman* v. *Smith, ubi supra.* Erle, J. interrupted the plaintiff's counsel by saying, " You can take the roof off," referring to the structure which was the subject of the action. To this it was replied, " In cases of a trespass, the party trespassed upon ordinarily has some such remedy in his own hands; but that does not prevent the injury from being a trespass." This view of the matter seems to be conformable to elementary principles. *Almy* v. *Grinnell*, 12 Met. 53, is a strong case, where the defendant was held to be justifiable in cutting down and removing a structure erected without right on his land. The fact that the trespasser is a tenant in common makes no difference in principle. If they were tenants in common of a way, it would not be doubted that if one erected a building upon it, the other might remove the building. A commoner may abate walls, gates, hedges, &c., erected by the lord, so as to deprive him of part of his common. *Potter* v. *North*, 1 Saund. 353, note 2. A tenant in common may reënter into the part from which he has been ousted, provided he can do so without a forcible entry or a breach of the peace. 1 Chit. Gen. Pr. 375. But he can have no right to use the property of his co-tenant which he finds there; and he must have the right to remove it, in order that he may enjoy his rights, unless it is to be regarded as common property. It would be contrary to principle to hold that a co-tenant might thus have property forced upon him. And no mischief can arise from the doctrine that the tenant who desires to erect a permanent structure on such land must obtain partition.

*Exceptions sustained.*