MARY R. STODDARD, Respondent, *v.* CHARLES S. WESTON *et al.,* Appellants.

*Supreme Court, Third Department, General Term, July 6, 1889.*

1. *Tenants in common. Ouster.*—A farm, substantially inclosed by a fence, may be occupied by a tenant in common, and his possession, the leasing of a part or the paying of taxes, is not an ouster of his co-tenant who is not in possession.
2. *Same.*—A co-tenant in possession may, by certain acts, make his possession hostile and adverse to his co-tenant, so that the co-tenant out of possession, if he fails to assert his rights, will lose his title.
3. *Same. Adverse.*—But in order to render his possession adverse, there must be an open assertion of exclusive title in himself brought home

to the knowledge of the co-tenant, or a possession so visibly hostile and notorious, and so apparently exclusive and adverse, as to justify an inference of knowledge on the part of the co-tenant.

4. *Same.*—Where a co-tenant in possession of the premises holds a mortgage given by his co-tenant, he cannot ignore his co-tenantcy and assume a holding under the mortgage without the consent of the mortgagor, or by legal proceedings.

Appeal from a judgment entered upon the decision of the court.

*Edgar T. Brackett,* for appellants.

*Charles S. Lester,* for respondent.

LEARNED, P. J.—This is a proceeding to compel the determination of a claim to real estate.

On April 3, 1855, Abiel Stoddard was the owner of the land in question. On that day he conveyed to one Weston an undivided quarter thereof by deed, which was duly recorded on the day of its execution. Weston gave back to Stoddard a purchase-money mortgage of $1,000, payable in one year, duly recorded on the same day; no part of which has been paid. Weston never went into actual possession. In May, 1857, Weston conveyed his interest by quit-claim to one Lee. Lee and Weston are dead, and the defendants are their heirs-at-law, and have never been in actual possession.

The plaintiff's title is as follows:

On the 26th of April, 1856, Stoddard executed a mortgage on the whole premises to Henry Barnard to secure $3,000, which was duly recorded. This was foreclosed by advertisement, and the property bought in by Barnard, March 5, 1864. In 1869, Barnard entered into a contract to sell plaintiff these premises. He died in November, 1873, and his heirs in pursuance of the contract, conveyed the premises to plaintiff June 23, 1883. She paid Barnard and his heirs therefor about $8,000; and since the conveyance

she has been in exclusive occupation. The court held that plaintiff was entitled to judgment, and that the defendants and all persons claiming under them, after filing notice of pendency of action, be barred. The defendants appeal.

When Stoddard mortgaged the property he owned only three-quarters undivided, and could convey no more. 1 R. S., m. p. 739, § 143. His conveyance was conclusive against subsequent purchasers (like Barnard) unless their deed was first recorded. Section 144. Indeed, by the terms of the mortgage he conveyed only " his right, title and interest." Nor did the mortgage contain any covenant of title. None is implied. 1 R. S., m. p. 738, § 140.

As the deed to Weston was then on record, Barnard took the mortgage, with notice of the conveyance, to Weston. And he could not claim to have a lien on any more than the three-quarters belonging to Stoddard. Stoddard was, at the time of executing that mortgage, a co-tenant with Weston. His possession was equally the possession of Weston. And this possession, as co-tenant, he could not deny, since Weston was his own grantee. There is no evidence that Stoddard's possession was, or was claimed to be, adverse to that of Weston. And it would be difficult to show such adverse possession, since Stoddard held security for the purchase money.

Barnard, by his foreclosure, did nothing but cut off the right of redemption. He did not increase the estate which had been mortgaged to him. Even a third person purchasing at that sale would have acquired only the estate which Stoddard had originally mortgaged to Barnard, because through that mortgage such purchaser must have made his title. And still more, Barnard, who was the original mortgagee, could acquire nothing by the foreclosure sale except the barring of the equity of redemption. The fact that there was a public sale gave him no increased estate. He knew then, as he had always known (or had presumptive notice by the recording), that the estate he was foreclosing

was only three-quarters undivided. So that the foreclosure gave him no greater estate than he would have had if Stoddard had executed to him a deed absolute, instead of a mortgage, April 26, 1856.

It is further found that, in 1866 and 1867, Barnard leased a part of the premises and his tenant occupied them, and that in 1868 he leased the whole, and that the same were inclosed by a substantial fence to keep in hogs and cattle. But the fencing the premises in did not fence the co-tenant out. It is also found that, since plaintiff's contract, she has entered into and continued in actual possession, has usually improved the premises, and paid the taxes, and that some portion has been fenced by a substantial inclosure.

None of these acts are inconsistent with the title which the plaintiff acquired of co-tenant with the owners of the other undivided quarter. A farm that is substantially enclosed by a fence may be occupied by a co-tenant; and the fact that it is so fenced is not in the least an ouster of the co-tenant who is not in possession. Nor is the leasing of a part or the paying of taxes. The co-tenant who is in possession ought in justice to the other co-tenant, to pay the taxes, because he enjoys the rents or their equivalent. And unless the rents, or their equivalent, exceed the taxes, there would be nothing for the co-tenant who is out of possession to receive.

Inasmuch as one co-tenant has as much right to possession as the other, his mere possession is not hostile, but is the possession alike of himself and of his co-tenant. Now, it is not to be disputed that a co-tenant in possession may, by certain acts, make his possession hostile and adverse to his co-tenant, so that in time the co-tenant out of possession, if he fail to assert his rights, will lose his title. But no such acts are shown here. No explicit notice of such adverse claim is shown to have been given to the defendants. Nor was the possession so visibly hostile and notorious and so apparently exclusive and adverse as to justify an inference

of knowledge on their part. Culver *v.* Rhodes, 87 N. Y. 348.

And we must here notice that the defendants were non-residents of the state, and therefore would not be likely to see what the plaintiff's possession was. The case last cited gives a full statement of the doctrine, and we think it unnecessary to repeat all the authorities there cited.

The essence of the doctrine, is that when one goes into possession as a co-tenant, then, in order to render his possession adverse to his co-tenant, there must be an open assertion of exclusive title in himself, brought home to the knowledge of the co-tenant. Zeller's Lessee *v.* Eckert, 45 U. S. 395. Until the co-tenant out of possession knows, or has reason to know, of this assertion of a hostile title, he may certainly rest in the belief that his co-tenant in possession is not doing him a wrong. Parker *v.* Proprietors, 3 Metc. 91.

Even if it should be urged that the conveyance of the Barnard heirs to plaintiff, was an assertion of a title adverse to that of defendants, yet that conveyance was in 1883, and this action was commenced in 1887. So that there was no time to charge laches. And furthermore, under 1 R. S., m. p. 739, section 143, these heirs could convey no more than they had.

But another claim is made, viz., that plaintiff and those under whom she claimed had occupied these premises as mortgagees in possession under the mortgage of Weston to Stoddard. Now this is but another mode of attempting to break down the principle that the co-tenant in possession is in possession for the other co-tenant also.

When Stoddard conveyed to Weston he became co-tenant. And although he took back a mortgage, yet he was not in possession as mortgagee. He could not ignore his co-tenancy and assume a different right. And a mortgagee in possession must come into such possession by consent of the mortgagor, or by legal proceedings, in order to acquire the rights which belong to such a mortgagee. Stoddard

was accountable to Weston as co-tenant for Weston's share of the rents and profits. His mere possession did not make him liable to pay the interest on the mortgage. Argall *v.* Pitts, 78 N. Y. 239. And he was not so bound to apply Weston's share of the profits. Had he been placed in possession by Weston as mortgagee different rights and liabilities would have arisen.

It is not a question here about the redemption of land covered by a mortgage. The defendants have the title. If from lapse of time the mortgage is presumed to be paid, then their title is free from the incumbrance. If any portion still remains unpaid, that portion is owing to Stoddard or his assigns and not, so far as appears, to this plaintiff. For the mortgage to Barnard did not transfer to him the mortgage of Weston to Stoddard. Even if there were any rents or profits to be applied on the mortgage that can be done only in an action for an accounting. Hubbel *v.* Moulson, 53 N. Y. 225.

At any rate, whatever may be the rights between these defendants, as owners of the one-quarter subject to the mortgage, and Abiel Stoddard, mortgagee, or his assigns, this plaintiff is not concerned with those rights.

When Stoddard mortgaged to Barnard, Stoddard could have acquired no title to Weston's one-quarter by virtue of any possession. Even if he were mortgagee in possession, still he had no title. The title still remained in Weston. Trimm *v.* Marsh, 54 N. Y. 599, criticising Hubbell *v.* Sibley, 50 Id. 472.

Therefore, his mortgage to Barnard conveyed no title to Weston's one-quarter. And this plaintiff's title takes its origin in the mortgage to Barnard. She can gain nothing by subsequently acquired rights, if any, of Stoddard.

The judgment should be reversed and a new trial granted, costs to abide the event.

LANDON and INGALLS, JJ., concur.