FALDING W. SKINNER, Respondent, *v.* FREDERICK ODENBACH, Appellant.

*Ejectment — judicial notice of error in courses and distances — monuments — declarations of occupants.*

It is a matter of common observation and experience that courses and distances, as represented by the early surveys in our forests, are not entirely correct, and that the monuments of such surveys, when found and well identified, are much more reliable and satisfactory.

It is not error, upon the trial of an action in ejectment, to prove the declarations of occupants, made upon the premises, in pointing out a boundary line, the effect of such evidence being only to show the extent of their possession and constituting no proof of title except such as might be inferred from occupancy.

APPEAL by the defendant, Frederick Odenbach, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 3d day of May, 1894, upon the report of a referee.

*Edward Harris,* for the appellant.

*John Van Voorhis,* for the respondent.

BRADLEY, J.:

The action is ejectment brought to recover an undivided two-fifths of a parcel of land in the town of Greece, county of Monroe.

In 1803 township No. 2, short range, west of Genesee river, consisting of upwards of 22,000 acres and owned by Sir William Pulteney and others, was by survey, made by William Shepard, divided into lots numbered from 1 to 62 inclusive. This division was represented by a map made by Shepard. And by a partition deed, made by the owners of the land in 1804, lot No. 54 was set off to Benjamin Crosby, and lot No. 62 to Joseph Annin. It may be assumed that the survey and map were made in contemplation of the partition, which, as appears by the deed, was made according to them. That township then was comprised in that portion of the territory of the county of Genesee which afterwards was included in the town of Greece, county of Monroe.

Through mesne conveyances from Crosby title came to John Berger in 1851 of that part of lot 54 lying between Braddock's bay and Lake Ontario. In 1872 Berger made a contract of sale of it to Adelia Skinner, wife of Roswell W. Skinner. She died before performance of the contract, and afterwards, in November, 1875, Berger conveyed the land to those who were the heirs of the vendee, of whom the plaintiff was one.

The finding of the referee that the land in question was within that so conveyed, necessarily resulted in his conclusion that the plaintiff was entitled to recover.

The contention of the defense is that the land in the possession of the defendant is in lot No. 62. And, in view of the fact as found by the referee, and of the exception to such finding and to his refusal to find to the contrary, the only question on this review for consideration on the merits is whether or not the conclusion that the premises in controversy are in lot No. 54 was fairly supported by the evidence. The eastern and northeastern boundary of both those lots is Lake Ontario. They join, and 62 is north of 54. The southeasterly corner of the latter is not questioned, and its shore or easterly line is described in the survey of Shepard as sixty-

one chains and twenty-five links in length.   If such is the length of that line of lot 54, it is quite clear that the land in question is in that lot.

But it is otherwise, if, as claimed on the part of the defendant, such line is ten chains shorter than that.   While there is evidence to the effect that some alteration appears to have been made in producing the figure six in sixty-one, and that it may have been changed from five to six, the inference is warranted upon the evidence that whatever may have been the alteration, it was corrective in purpose and made by Shepard at the time he made his field notes.   In them is the only place in which the figures indicating courses and length of lines of his survey appear.   The map gives without figures the traverse by lines of the lots.   The defendant sought to controvert the fact that the length of the shore line of lot 54 was sixty-one chains twenty-five links, and to show that it was only fifty-one chains twenty-five links.   And for that purpose attention was called to the field notes in which the monument at the southeast corner of 62 and the northeast corner of 54 is described as an oak tree "near the outlet of Braddock's bay," and, again, as a "black oak on the beach of the lake and Braddock's bay m'k'd S Side No. 54 N. W. No. 62."   There is no evidence other than that furnished by the field notes that any such tree was standing at the northerly end of the shore line sixty-one chains twenty-five links from the southeast corner of lot No. 54.   The field notes also represent the course of the line running westerly from that corner between lots 54 and 62 as south seventy-three and one-half degrees west, which is not the appropriate course of a line between those lots from the north end of a line sixty-one chains twenty-five links in length.

The defendant then gave evidence tending to prove that there had been an oak tree a short distance south of the land in question having some marks upon it, and which, as one witness testified, was eight rods from the lake shore.   In view of all the evidence relating to an oak tree at the place, and bearing upon that subject, the referee was permitted to conclude, as he did, that such tree was not the shore corner of lots 54 and 62 or on the line between those lots.

A surveyor who sought to locate on the ground the lines of lot 54 as established by Shepard's survey, was called as a witness on the

part of the plaintiff, and testified to the effect that in proceeding to do so he examined and ran the lines of several lots in the tract in the manner and for the purpose mentioned by him, to which it is deemed unnecessary here to specifically refer. He made a map by which it appears that in running the shore line of lot 62 from its northwest corner he omitted to describe the last two courses and distances represented by Shepard's field notes. On his cross-examination his attention was called to it, and he testified that the traverse of the lake front of lot 62 as given by Shepard in his field notes, ran further south than the northeast corner of lot 54 and to a point south of the defendant's hotel. These last two lines as described in the field notes were " S. 30 deg. W. 9.50, S. 7 deg. W. 6.48." By an examination of the map of the witness it is seen that the shore line of 62 is represented as extending a considerable distance southerly from the line of the last course there given by him. He further testified that when he got there he could not tell where to go by Shepard's notes, whose survey he found would not balance up, and he did not and could not draw it any further because his courses and distances would not balance, and for the further reason that the courses would be out in the lake ; that the lines as surveyed by Shepard had been washed away, and the best that could be done was to plat his survey upon a map ; that is what he attempted to do, and Shepard's notes would not balance on lot 62. The view of the witness was that there was some error in Shepard's field notes of the southern portion of the shore line of lot 62. He assumed that the shore line of lot 54 had the length described in the field notes, and that the description of the line between these lots as south seventy-three and one-half degrees west was erroneous. He further testified that by the scale which he adopted of Shepard's map the length of the shore line of lot 54 as represented by the map was at least sixty-one chains and twenty-five links. There evidently is a mistake somewhere in Shepard's field notes in relation either to the shore line of lots 54 and 62 or in the course of the line between these lots. The witness refers to a map of the subdivision of lots 60 and 62 into seven lots made by Benjamin H. Brown prior to 1835, and to a survey of the eastern part of lot 6 of that subdivision (which is in lot 62 and bounded easterly by the lake) made by Austin Spencer in 1847, and as the witness understands them, these surveys corre-

spond with that of the witness in the location of the line between lots
54 and 62, and the survey of Spencer describes its course as south
sixty-six degrees west; and as a verification of Brown's survey in
support of such location of that line, reference is made to his map
and the scale on which it was made. There is no black oak tree on
it near that line as it approaches the lake, but it appears that there
was shortly before the trial in 1893 an elm tree standing there as
described by the surveyors, nearly three feet in diameter, having
a surveyor's mark grown over a portion which he cut out and
produced at the trial, and he added that in his judgment these
marks were made in the neighborhood of ninety years before. The
survey of this portion of the tract was made by Shepard in the
latter part of November and fore part of December, 1803. And
there is some evidence tending to prove that when the elm is with-
out leaves (as it is that season of the year) a casual observer may not
distinguish it from oak. It is possible that the suggestion is appli-
cable to the early surveyor, although he was familiar with the woods
and the various kinds of timber in that locality. The importance of
great care and accuracy in representing the lines and corners of the
lots may not then have been as apparent as it has since become by
reason of increased value of the land. It may be observed that in
the contract of Berger with Adelia Skinner, and in his deed to the
plaintiff and others before mentioned, the easterly or lake shore line
of lot No. 54 was described as sixty-one chains and twenty-five links
in length. The parcel of land so conveyed was subdivision 4 of
lot 54, as subdivided by Valentine Bros. in 1818. And the deed
from the Bank of Monroe to Charles Rhodes of date June, 1848,
conveyed the east part of subdivision 6 of lot 62 as surveyed by
Spencer, to which survey reference has already been made. There
is evidence on the part of the plaintiff to the effect that the south
line of the land so conveyed was the line between 54 and 62. And
the plaintiff also gave evidence tending to prove that from and after
the time that Berger took his deed in 1851 the lands so conveyed to
him and Rhodes were treated by the occupants as adjoining, and
that the contested line which, as the northern boundary of lot 54
would include the land in question in that lot, was by occupation,
acts and declarations of the occupants for more than twenty years
recognized as the line between their lands.

It may be observed that some difficulty in reproducing the line along the lake as it was represented by the survey of 1803 may have been occasioned by the fact that during the period subsequent to that survey the land along the shore to a considerable extent, as well as timber, had been taken away by the action of water. And some uncertainty at this late day very likely exists as to the precise locality of some of the lines of the survey then made by Shepard in dividing that large tract of land into lots. It is a matter of common observation and experience that the courses and distances as represented by the early surveys in forests are not entirely correct, and that monuments of such surveys, when found and well identified, are much more reliable and satisfactory. The present case is an illustration of the opportunities which those surveys furnish for controversy about lines, and the doubt and difficulty which in such cases may attend judicial determination.

The defendant obtained in 1890 the deed under which he claims. Whether or not his grantors had, or he took by their deed, title to any land in lot 62 is not the subject of inquiry on this review, only as it incidentally arises in considering the question of the location of the line between that lot and lot 54. Treating the land in question as in the latter lot, it is difficult to see that the grantors of Frisbee, who made the deed to the defendant's grantors, had title to any land in lot 62.

The learned referee gave at some length his reasons for the conclusion that it was in lot 54. The question was one of fact. And the view here taken is that the finding of the referee that the land in controversy was in lot 54 is fairly supported by the evidence.

The declarations of the occupants made upon the land in pointing out the line were, in practical effect, evidence only of the extent of their possession and not of title other than such as might be inferred from the occupancy. The admission of this evidence was not error. (*Jackson ex dem. McDonald* v. *McCall,* 10 Johns. 377; 3 Washb. Real Prop. [4th ed.] 427.)

There was no error on the trial to the prejudice of the defendant. The judgment should be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment affirmed.