(48 Misc. Rep. 13)

### COLE v. LESTER et al.

(Supreme Court, Special Term, Herkimer County.　July, 1905.)

1. EVIDENCE—DECLARATIONS.

Where a person claiming to hold adversely to his co-tenant made certain declarations during such adverse holding, they may be proved by those claiming under him to show the character of his possession.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1111.]

2. TENANCY IN COMMON—ADVERSE POSSESSION—EVIDENCE.

Where a co-tenant had gained title to certain premises in question by exclusive adverse possession of 28 years, admissions in a deed to other property reciting that such person and his sister were heirs at law in the lands conveyed to their father, which included the lands adversely held, were insufficient to devest him of title.

3. SAME.

Where defendant's ancestor held open, notorious, and exclusive possession of the property in question as against his co-tenant for 32 years, accompanied with open claims of title, it establishes adverse possession against his co-tenant.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tenancy in Common, §§ 42-49.]

Action by Collingwood Cole against Emma Lester and others for partition.　Judgment for defendant.

Erwin L. Hockridge (Thomas S. Jones, of counsel), for plaintiff.
C. D. Thomas, for defendants.

WRIGHT, J.　This is an action in partition.　In 1868 Collingwood Vickerman acquired 13 acres of land in the village of Ilion, N. Y.　He died in August, 1878, leaving two children, James and Jane.　The plaintiff is the son of Jane, and the defendants Lester and Rasbach are daughters of James.　The defendants claim to own one-half of an acre of said land by virtue of the alleged adverse possession on the part of James, their father, as against his co-tenant and sister Jane, through whom the plaintiff claims title as a co-tenant with the defendants Lester and Rasbach.　In 1869 James Vickerman entered on the lot in question and expended $1,800 in erecting a dwelling house.　He inclosed the lot with picket and board fences.　He drained and graded the lot. He set out shade and fruit trees and currant bushes.　He cultivated a garden.　In short, he occupied, cultivated, and enjoyed the premises as his own home from 1869 till the time of his death in 1902, all the while asserting title and claiming to own the premises.　There is no evidence that he recognized any ownership in his father or sister, or that they ever questioned his right to possession, or that they ever asserted any interest in the lot in question.　Clapsaddle testified that Collingwood Vickerman told him that he had "given that there place to James and he was going to build a house there."　Jacob Rasbach testifies that, while he was cutting weeds on the lot in question, Collingwood said to him:

"When you get James' weeds all down, if you will, go over on the other side and cut them down for me, and I will pay you for it."

This evidence tends to show that Collingwood recognized and acquiesced in James' occupation and ownership of the lot in question,

and tends to explain James' action in building and maintaining his homestead there and openly declaring that he owned the premises. Did James acquire title against his co-heir by adverse possession? While it is true that, where one of several heirs enters in or remains in possession of premises on the death of his ancestor, his possession will, in general, be considered the possession of his co-heirs and for their benefit, still it is well settled that one tenant may hold adversely to his co-tenant, and, if his possession is continued uninterruptedly for the statutory period, he will acquire an indefeasible title (1 Cyc. 1072–1080; Stoddard v. Weston [Sup.] 6 N. Y. Supp. 34; Florence v. Hopkins, 46 N. Y. 182; Abrams v. Rhoner, 44 Hun, 507); and there is nothing in the relation between heirs which will prevent the possession of one from becoming adverse to the others. 1 Cyc. 1080.

The co-tenant must have notice of the adverse possession. But actual verbal or written notice is not always necessary. The adverse possession may be inferred from outward acts, open and notorious claims of ownership, and the exercise of such exclusive right that notice may be reasonably presumed. 1 Cyc. 1704; 1 Am. & Eng. Ency. of Law (2d Ed.) 805. Speaking of adverse possession in Culver v. Rhodes, 87 N. Y. 353, Judge Finch lays down the rule as to notice as follows:

"Assuredly it should be one which requires notice in fact to the co-tenant, or unequivocal acts, so open and public, that notice may be presumed of the assault upon his title and the invasion of his rights. * * * Originally an actual disseisin, a palpable turning out of the co-tenant, or hindering him from entry, seems to have been requisite. The modern rule is content with less, but is well stated in Hawk v. Senseman, 6 Serg. & R. 21, that to effect an ouster of the co-tenant there must be 'an actual, continued, visible, notorious, distinct, and hostile possession.' * * * If no explicit notice is given to the co-tenant of the denial of his right, the occupant must make his possession so visibly hostile and notorious, and so apparently exclusive and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted, and of laches if he fails to discover and assert his rights."

In Feliz v. Feliz, 105 Cal. 1, 38 Pac. 521, it is held that if a tenant is in possession, exercising acts of ownership of an unequivocal character and of such a nature that by their own import they give notice to the other co-tenants that an adverse possession is intended to be asserted against them, then the possession of such tenant in common is adverse. So, under the facts disclosed in this case, it is reasonable to presume that the co-tenant of James Vickerman had notice of his claim.

In Jackson v. Whitbeck, 6 Cow. 632, 16 Am. Dec. 454, the father moved away in 1783, leaving a son in possession, who always asserted his title, saying his father gave him the farm. His possession and that of his successors was held to be adverse to the claim of the other heirs of the father.

Woolsey v. Morss, 19 Hun, 273, holds that where a plaintiff and those under whom he claims have been in the entire and exclusive possession of the premises, cultivating the same and receiving the rents and profits, conveyances having been made and possession taken under the deeds, no one having ever questioned the rights of those in possession or asserted any right to the property or its possession for over 40 years, a jury might properly find an actual ouster.

In Hutson v. Hutson (Mo.) 40 S. W. 886, where a co-tenant in exclusive possession of lands for over 20 years, had taken the profits to

the knowledge of the co-tenant, paid the taxes, sold timber, and erected a residence and other buildings without objection, it was held that he had adverse possession.

Erecting a building on a portion of land held in common by one of the tenants in common is such an exclusive appropriation thereof to his own use as to amount to an ouster of his co-tenant, and will entitle the latter to maintain an action for the trespass, or to remove the building. Bennett v. Clemence, 88 Mass. 10.

It is said in Hill v. Coal Valley Min. Co., 103 Ill. App. 41 (Annot. to Cyc. for 1904, p. 101), that a strong circumstance from which adverse possession may be inferred is the making of permanent improvements such as the erection of division fences, the planting of orchards, or the erection of substantial buildings on the premises in controversy.

In Cornelius v. Hall, 32 Misc. Rep. 663, 66 N. Y. Supp. 451, Justice Gaynor says:

"A claim of title may be made by acts alone just as effectively as by assertions of such claim. Such acts are often much more satisfactory evidence than oral assertions. The acts of building the house and living in it, and cultivating the land and exclusively possessing it, are sufficent evidence to support a finding of fact that he claimed title. In addition, he stated to two persons called as witnesses that he owned the land. This is competent evidence."

I think, therefore, that James Vickerman acquired title to the lot in question as against his sister by adverse possession.

Objection is made to the admission in evidence of certain declarations of ownership made by James Vickerman while in possession of the property in question, on the ground that it was not shown that they actually came to the knowledge of his co-tenant. The requisites of adverse possession are possession and the quo animo. Doherty v. Matsell, 16 N. Y. St. Rep. 596. I think this evidence was admissible as characterizing his possession. The declarations show the quo animo of his occupancy and that he intended to hold adversely.

It is said in Humbert v. Trinity Church, 24 Wend. 604:

"An oral claim of exclusive title, or any other circumstances by which the absolute owner of land is distinguished from the naked possessor, are equally admissible, and may be equally satisfactory."

In Morss v. Salisbury, 48 N. Y. 642, it is said:

"The declarations of Brandow which were objected to were admissible to characterize the possession of the defendant as adverse to any title of the plaintiff."

This case is cited with approval in People v. Holmes, 166 N. Y., at page 547, 60 N. E., at page 251.

In Diefendorf v. Thomas, 37 App. Div. 51, 55 N. Y. Supp. 692, it is said:

"It was competent for the defendant, claiming a practical location of the line between the parties, or an adverse possession, for a period of over 20 years, to show during that period the possession of herself and her grantors up to that line, and that she and they claimed to be the owners of the disputed strip. Such evidence was proper to characterize the possession of the defendant and her grantors; to show an adverse possession, an occupancy under a claim of ownership, and not under the plaintiff or his grantors."

In Edmonston v. Edmonston, 13 Hun, 137, it is said:

"The counsel for the appellant also insists that the admission of the declarations of Mrs. Elizabeth Edmonston, made to various witnesses and on various occasions as to her title, was clearly erroneous. Those declarations were inadmissible for the purpose of establishing such title, but the only objection made was to the admissibility of the testimony. The declarations of Mrs. Edmonston while in possession, on the subject of whether she claimed title and what title, were, we think, admissible in evidence to characterize the possession, as whether it was claimed under a title adverse to that of the heirs of Elijah Edmonston: and specifying what title she did claim under was one mode of showing that she claimed under an adverse title."

In Jackson v. Vredenbergh, 1 Johns. 159, the question was as to the admissibility of certain declarations of the widow in possession that her husband left a will giving her the premises in question, that the will had been taken from her, that the premises were her own. The court says:

"But for another purpose the declarations of Mrs. Punderson were clearly evidence, namely, to show in what character or with what intent she entered and held possession of the premises in dispute."

In People v. Holmes, 166 N. Y. 546, 60 N. E. 251, Chief Judge Parker says:

"The general rule being that parol declarations or admissions, since they cannot confer or divest title, are not admissible as evidence of title either to sustain the burden of proof of title or to rebut prima facie evidence, but only to show the nature and extent of the possession and the character and quality of the claim of title under which the property was held."

In Rand v. Huff (Kan. Sup.) 53 Pac. 483, it was held that declarations of a deceased co-tenant in possession, asserting title in himself, are admissible to prove a possession under adverse claim of title, though not to prove title.

The fact that a party asserted that land belonged to her is no evidence of title, but it is the best possible evidence that she claimed it. Hickman v. Gillum, 66 Tex. 314, 1 S. W. 339. In ejectment, where the defense is adverse possession, evidence of declarations by a deceased person, through whom defendants claim title, made while in possession of the premises, to the effect that he was the owner, is admissible as characterizing the possession. Brown v. Kohout, 61 Minn. 113, 63 N. W. 248; Roebke v. Andrews, 26 Wis. 311; Bennett v. Camp, 54 Vt. 36. "Declarations of one in actual possession of land, showing that he claims to be sole owner, are admissible as tending to show hostility of possession." 1 Cyc. 1148.

Samuel Underwood testifies to a conversation he had with James Vickerman while on the premises in question:

"I asked him who owned the part of the lot this side of it—north of it. It was a garden. He said that was his garden all down there. Says I, 'Who owns that other land?' He said he had an interest in it, him and his sister."

Martin Ostrander testifies:

"I asked him [Vickerman] whether he owned all, and he said he did not, 'only just where the house and barn stood.' He said the other belonged, I think, to his father and him, and what he owned in there was fenced in—by the garden and where the house stood."

This evidence is admissible under the rule laid down in Skinner v. Odenbach, 85 Hun, 595, 600, 33 N. Y. Supp. 282. The court says:

"The declarations of the occupants made upon the land in pointing out the line were in practical effect evidence only of the extent of their possessions,

and not of title, other than of such as might be inferred from the occupancy. The admission of this evidence was not error."

The only case cited contra to these authorities is that of Sturges v. Parkhurst, 50 N. Y. Super. Ct. 306. In that case "the counsel put himself solely upon the right to declarations under any circumstances whatever, not offering to show other characterizing facts." The case holds that an open possession and a whispered claim are not enough, or any claim which appears to be likely not to reach the ears of the true owner. In the case at bar, the declarations were made openly and publicly to neighbors. It is unlikely that the co-tenant did not hear of them.

It is claimed by the plaintiffs that a certain deed, dated October 11, 1898, to the village of Ilion, of certain rights, given by both Jane Cole and James Vickerman, referring to the original deed to Collingwood Vickerman, and reciting that they were his heirs at law in the lands conveyed to Collingwood Vickerman, is an admission binding upon the defendants. It appears that the deed affected only the portion of the estate upon which the mills stood, and which is conceded to belong to James Vickerman and his sister, Mrs. Cole, as tenants in common. At the time this deed was given, James Vickerman had already gained title to the premises in question, having occupied them exclusively for over 28 years and adversely to his sister for over 20 years. The admissions in the deed did not divest him of his title. It has been held that, where adverse possession has ripened into a title, recognition of title in the former owner will not operate to revest title in him. Abb. Tr. Ev. (2d Ed.) 905, citing Stuyvesant v. Tompkins, 9 Johns. 61. It has been held that payment of rent to the former owner did not defeat the title already gained (Riggs v. Riley, 113 Ind. 208, 15 N. E. 253); nor a parol promise to determine the true line by a survey (Lamoreaux v. Creveling, 103 Mich. 501, 61 N. W. 783); nor an agreement between the parties without a deed (Allen v. Mansfield, 82 Mo. 688). See also 1 Cyc. 1139.

Further, estoppels are limited to questions arising in the deed itself, and do not apply to a collateral action, such as the present one, not founded on the deed. Edmonston v. Edmonston, 13 Hun, 133. In this case, on page 137, the court says:

"But there is no authority to show that a party to an instrument would be estopped in an action by the other party, not founded on the deed and wholly collateral to it, to dispute the facts so admitted, though the recital would certainly be evidence."

The evidence showing the open, notorious, and exclusive possession of the property in question by James Vickerman, with his accompanying acts and open claims of title indicating publicly his intention to hold the same adversely to his sister, and that no objection was ever made to such occupancy and claims for a period of over 32 years (including a period of 24 years after his father's death), it must be held that James Vickerman gained title to the property in question as against his sister by adverse possession, and consequently that the defendants, Emma Lester, and Mary Rasbach, children of the said James Vickerman, hold the legal title in fee to the premises in question.

Judgment accordingly.