(65 Misc. Rep. 399.)

### CANNON v. QUINCY et al.

(Supreme Court, Special Term, New York County. December, 1909.)

1. TRUSTS ( 217*)—INVESTMENT OF TRUST PROPERTY—RAILROAD OR INDUSTRIAL STOCKS.

A trustee under a will, in the absence of authority in the will, cannot continue an investment formerly made by testator, which he would not be justified himself in making, and hence cannot continue an investment of trust funds in railroad or industrial stocks, under Personal Property Law (Laws 1909, c. 45; Consol. Laws, c. 41) § 21, limiting a trustee to investment of trust funds in the same kind of securities as those authorized for savings bank investments, and in bonds and mortgages on unincumbered real property in the state to the extent of 50 per cent. of its value, and Banking Law (Laws 1909, c. 10; Consol. Laws, c. 2) § 146, allowing savings banks to invest their funds in United States bonds, state bonds and stocks, and stocks of certain municipalities and first-mortgage railroad bonds of certain roads.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 306, 307; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 685*)—CONSTRUCTION—TRUSTS.

   Testator left his residuary estate to his wife during her life, provided she remained his widow, but, if she remarried, she was to receive only the dividends and income arising from stock in a certain corporation for life, and upon her death the stock was to become a part of the residuary estate, out of which a trust fund was created for the benefit of each of testator's two children or their issue. The will did not declare any intent of the testator that such stock should be held by the trustee after the wife's death, nor could such intent be fairly inferred from the will. The widow died without remarrying. *Held*, that it was the trustee's duty to hold the stock until the widow's death, and then sell it within a reasonable time thereafter, and divide the proceeds between the two trust funds created for the benefit of the children.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1629–1630; Dec. Dig. § 685.*]

Action by Charles M. Cannon, as substituted trustee under the will of John W. Quincy, against Mary Perkins Quincy and another, as committee of the property of John W. Quincy, an incompetent person, and another. Will construed, and trustee instructed.

Wilfrid N. O'Neil, for plaintiff.
Leonard & Walker, for defendant Quincy.
Otto B. Schmidt, for defendant Lauck.
Willard N. Baylis, for defendant Trowbridge.

DOWLING, J. Under the will of John W. Quincy, deceased, his residuary estate was left to his wife for the term of her natural life, provided she remained his widow; but upon her remarriage she was to receive only the dividends, income, and profits arising from his stock in the Thomas Iron Company for the term of her natural life, and upon her death said stock was to fall into and become a part of the residuary estate, to be disposed of as provided in the following (third) paragraph of his will. By that third paragraph there was created, upon the death or remarriage of his wife, a trust estate for the benefit of his children by said wife, or their issue, into which trust should pass his entire trust estate, including specifically the stock of the Thomas Iron Company. His widow died without remarrying. The beneficiaries of the trust estate are his children by Lucretia D. Quincy, viz.: Mary Perkins Quincy and John W. Quincy. Differences of opinion have arisen between said beneficiaries as to whether a sale of said stock should be had, and, the trustee desiring the direction of the court, this action is brought for a construction of the will and for instructions to the trustee as to his proper course in the premises.

At the outset, it may safely be asserted that the rule laid down for the character of the securities in which trustees might invest funds of their trust estates has been settled since the case of King v. Talbot, 40 N. Y. 76, wherein Woodruff, J., laid it down:

"Whenever money is held upon a trust of this description (i. e., for children), it is not according to its nature, nor within any just idea of prudence to place the principal of the fund in a condition, in which it is necessarily exposed to the hazard of loss or gain, according to the success or failure of

the enterprise in which it is embarked, and in which, by the very terms of the investment, the principal is not to be returned at all. It is not denied that the employment of the fund, as capital in trade, would be a clear departure from the duty of trustees. If it cannot be so employed under the management of a copartnership, I see no reason for saying that the incorporation of the partners tends, in any degree, to justify it. The moment the fund is invested in bank, or insurance or railroad stock, it has left the control of the trustees. Its safety and the hazard or risk of loss is no longer dependent upon their skill, care, or discretion, in its custody or management, and the terms of the investment do not contemplate that it ever will be returned to the trustees. If it be said that at any time the trustees may sell the stock (which is but another name for their interest in the property and business of the corporation), and so repossess themselves of the original capital, I reply that is necessarily contingent and uncertain, and so the fund has been voluntarily placed in a condition of uncertainty, dependent upon two contingencies, first, the practicability of making the business profitable, and, second, the judgment, skill, and fidelity of those who have the management of it for that purpose. If it be said that men of the highest prudence do in fact invest their funds in such stocks, * * * in their private affairs they do, and they lawfully may, put their principal funds at hazard; in the affairs of a trust they may not. The very nature of their relation to it forbids it."

This rule has been recognized by the law governing investment of trust funds (Personal Property Law [Laws 1909, c. 45; Consol. Laws, c. 41] § 21), which limits a trustee to investment of trust funds in the same kind of securities as those authorized for savings bank investments, and in bonds and mortgages on unincumbered real property in this state to the extent of 50 per cent. of its value. The banking law (Laws 1909, c. 10 [Consol. Laws, c. 2], § 146) allows savings banks to invest their funds in United States bonds and stocks, state bonds and stocks, bonds and stocks of certain municipalities, and first-mortgage railroad bonds of certain roads. There is no provision of law by which trust funds may be invested in railroad or industrial stocks. It was held in Matter of Burr, 48 Misc. Rep. 74, 96 N. Y. Supp. 235, that:

"Generally speaking, trustees are not justified, in the absence of some authority in the instrument creating the trust to the contrary, in continuing an investment formerly made by the testator which they would not be justified themselves in making. Perry, Trusts, §§ 454, 465. It is their duty to convert such stocks into money within a reasonable time after the creation of the trust."

Although the removal of the executor in that case was afterwards reversed by the Appellate Division (118 App. Div. 482, 104 N. Y. Supp. 29), their action was based on other grounds, and this doctrine was not questioned. Nowhere can there be found in the will any declaration of an intention or desire on his part that this stock should be held by the trustee beyond the time of his wife's death.

Nor can such an intent or desire be fairly inferred from the language used. The claim of such intention is based on the third paragraph of the will. But the words, "I hereby give, devise and bequeath all the rest, residue and remainder of my said estate, including the Thomas Iron Company stock," are used because it was necessary to make an inclusion of that stock in the residuary estate in view of its possible separation from the corpus of the estate in the event of

the widow's remarriage. And that this was the occasion of the specific mention of the stock in paragraph "third" is proven by the words which immediately follow those just quoted:

"Subject, however, to the payment to my said wife of the interest, income and dividends arising from said stock for and during her natural life in case of her remarriage."

Conceding that the deceased thought highly of his investment in this stock, that he was convinced of its present and prospective value, and that he discussed its merits with his friends, this but strengthens the view that, having its merits continually in mind, he would have made plain provision for its retention by his trustee did he desire him so to do. It is clear, therefore, that, first, it was the duty of the trustee to hold the stock in the Thomas Iron Company until the time of Mrs. Quincy's death, for, if she at any time remarried, a special trust fund of such stock was created for her benefit for life, the income, dividends, and profits of such stock being so payable to her; second, it was the duty of the trustee within a reasonable time after Mrs. Quincy's death to sell such stock and divide the proceeds between the two trust funds created for the benefit of testator's children. Let decision and judgment be submitted accordingly; and, as such sale has not yet been had, it should take place as speedily as can be safely done. Costs and disbursements, payable out of the fund, are awarded to all the parties who have appeared herein.

Judgment accordingly.