(59 App. Div. 584.)

### WOTTON v. DE REAU et al.

(Supreme Court, Appellate Division, First Department. April 4, 1901.)

1. EXECUTORS AND ADMINISTRATORS—SECURITIES—REINVESTMENT—LIABILITY.

Where testator owned securities in which an executor was not authorized by law to invest the estate's money, the fact that the testator, prior to her death, wrote the beneficiary under her will that she did not wish the securities changed, and the letter was shown to the executor, did not relieve him from liability for a loss occasioned by his failure to reinvest in proper securities.

2. SAME—EXCEPTIONS—QUESTIONS PRESENTED.

Where the beneficiary excepted to a sale of securities on the ground that the executor had no right to sell them because the testator had devised the income to one beneficiary with remainder to others, a decree charging the executor with a loss occasioned by his failure to promptly dispose of such securities and reinvest the proceeds in securities which an executor was authorized by law to retain, was erroneous, since no such objection was presented by the beneficiary's exception.

3. SAME—COMMISSIONS—DISALLOWANCE—NEGLIGENCE.

Where an executor, after the sale of securities belonging to the estate, mixed the proceeds with his own funds, and retained them for several years without interest, and then placed the amount in the custody of his sister, who enjoyed the use of it for several years without charge, it was proper to refuse him commissions for selling the securities.

Appeal from surrogate's court, New York county.

William C. Wotton filed his accounts as executor and trustee of the last will of Phebe E. Bonnefoux, deceased, to which Clara B. De Reau and others filed exceptions. From a decree charging the executor with a loss occasioned by his delay in selling certain securities and refusing to allow him commissions, the executor appeals. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles H. Griffin, for appellant.
Ralph S. Rounds, for respondents.

RUMSEY, J. Upon the settlement of the accounts of the appellant as the executor under the will of Phebe E. Bonnefoux, deceased, the surrogate, among other things, charged him with a loss upon the sale of some bonds belonging to the estate to the amount of $1,326, and disallowed his commissions; and, although various other questions were raised in the court below, it was stipulated that nothing should be presented in this court except the propriety of those two rulings of the surrogate. As to the first, the facts are that Mrs. Bonnefoux died in 1888, and the appellant was appointed her executor in the month of June of that year. At that time, among other property of the estate, were four bonds of the Kansas & Pacific Railroad Company for $1,000 each, which were appraised at $4,460. They were due on the 1st of May, 1919, and bore interest at the rate of 6 per cent. Interest was paid upon them, as appears by the papers, down to 1894, at which time they became very seriously depreciated in value, and no further interest was paid, but the appellant continued to hold them until 1897, when he sold them at a price which re-

sulted in a net loss of $1,326 on the inventoried value, with which sum the appellant was charged. It appears from the papers that the income of the property was given for life to Mrs. Clara B. De Reau, a daughter of the testatrix, with remainder over to certain persons, who are made parties to this appeal. Mrs. Bonnefoux, in 1884, wrote a letter to her daughter, Mrs. De Reau, in which she stated that she did not desire to have any of her securities changed, and that she had selected those that had a long time to run with that object in view. This letter was communicated by Mrs. De Reau to the executor in 1888 or 1889, and at the time when the letter was shown to him Mrs. De Reau stated that it was also her desire that the instruments should remain as they then were. For a long time after that the interest was paid. The legatees filed objections to the executor's account, in which, among other things, they objected to the sale of these bonds; and the matter was referred to a referee, who decided as a matter of law that the executor was not authorized to retain the securities as an investment, but should have sold them, and converted them into authorized securities; and because he did not do this he was charged with the loss. The referee does not find that the executor was guilty of negligence in his management of the estate, or that in the failure to sell them there was any lack of prudence or diligence; nor is any reason derivable from his report for charging the executor with this loss, except that he retained the bonds, and did not sell them, and invest the proceeds in securities authorized by law, as soon as practicable after they came into his possession. The executor claims that, in view of these facts, he was justified in permitting the original investments as made by the testatrix to stand, and that, if he did so in the exercise of his discretion, he would not be chargeable with the loss that resulted from their depreciation. We are not inclined to adopt this view of the duties of an executor. It has been settled in this state that a trustee holding a fund for investment is bound to put it in government or real securities. King v. Talbot, 40 N. Y. 76. The rule laid down in that case has been enforced by the courts, and trustees have been held to that form of investment, except so far as the legislature has from time to time authorized an investment by trustees in certain other specified securities. But the fact that the legislature has given to trustees the right to invest in particular securities in addition to those allowed by the courts, may be taken as an indication of its policy that the power of trustees to make investments is not to be enlarged further than it already has been by statute. It is claimed, however, that, although, as an original proposition, a trustee is limited in the power of investment to those securities authorized by law, yet when he finds the investment already made by the testator in interest-bearing securities, he is at liberty in his discretion to continue to hold them. We are not inclined to lay down a hard and fast rule in respect of this matter. When a trustee finds the estate committed to him already invested in interest-bearing securities, we are not inclined to say that it is his absolute duty at once to dispose of them without regard to the market, or the demand for them, or the ruling price, or the probability of an advance in their value. It is sufficient to say, how-

ever, that ordinarily, if a trustee sees fit to continue such investments after he shall have had a reasonable opportunity to sell them without loss, and to invest them in those securities which by law he is authorized to hold, it must be an exceptional case which will justify him in his failure to do so where, as a result of that failure, there has been a loss. See Hill, Trustees, marg. paging 380, 381; Perry, Trusts, pp. 465, 466. But the question whether this investment was proper in this case is not, in our judgment, presented in such a way as to warrant the referee in considering it, or in such a way as to justify the surrogate in charging the executor with the loss. The sole point upon which he is sought to be charged with the loss is that he should have sold these bonds shortly after they came into his hands. But no such objection is made by the contestants. The objection to that part of his account in which he has credited himself with the amount of the bonds is put upon the ground that they were specifically bequeathed to Mrs. De Reau for life, and to the remaindermen after her death, and that for that reason the sale was not only unnecessary, but he had no right to make it. We do not think that this objection brings up the question of the negligence of the executor in making this sale. It amounts substantially to an admission on the pa_t of the contestants that the bonds should not have been sold, but should have been retained, and for that reason, also, we think that the surrogate erred in that part of his decree.

The only other question presented in view of the stipulation is whether that part of the decree disallowing commissions is proper. It is claimed by the respondent that this question is not properly raised by exceptions, and for that reason cannot be considered. We do not deem it necessary to decide upon that point. It appears in the case that the executor, after having retained these bonds for a long time, sold them with other assets of the estate amounting in the aggregate to over $15,000; that he made no effort to reinvest the proceeds, but turned them over to his sister, without keeping anything to show for them, and she held them, without paying interest, down to the time of the accounting. Before turning the proceeds over to his sister, he had deposited them in his own bank to his own credit, mingling the fund with his personal assets, so that for a long time this money was at the risk of his own business, and subject to his debts. During that time he paid no interest to the life tenant. The whole transaction with respect to this matter after he sold this property shows the grossest carelessness on his part with regard to the management of this fund, amounting to misconduct or maladministration, and therefore I think that the determination of the surrogate to disallow commissions to the executor was proper. Stevens v. Melcher, 152 N. Y. 583, 46 N. E. 965. For these reasons this part of the decree of the surrogate must be affirmed, but the decree must be modified by striking out so much of the charge against the executor as is represented by the sum of $1,326, being the amount of the loss on the inventory, so that the balance for which he shall be charged is $1,055.41, instead of $2,381.41, and, as so modified, the decree must be affirmed, without costs to either party in this court. All concur.