Matter of the Estate of CHARLES YUNG, an Infant.

(Surrogate's Court, New York County, April, 1918.)

Guardians — general — duty of —accounting — trustees.

> Where among the assets of the estate of the mother of an infant were certain securities not of the kind sanctioned by law, upon payment of the same over to the father of the infant as his general guardian, by himself and another as trustees of the mother's estate, it was the duty of the guardian to dispose of them, and upon his accounting as such general guardian he will be directed to make good the difference between the price at which they could have been sold when he received them and the price now obtainable for them.

> The decree entered upon the accounting of said guardian will provide for the turning over of the securities to him personally for use in realizing the amount with which his account is hereby surcharged.

PROCEEDINGS upon the contested accounting of a general guardian.

William S. Petty (Charles C. Bunker, of counsel), for general guardian.

Phoenix Ingraham, special guardian for Charles F. Yung.

FOWLER, S.    This matter comes up on exceptions to the report of Mr. Emory R. Buckner, referee, on the contested accounting of the general guardian of the above-named infant.

The only question at issue is in regard to an investment of a portion of the funds belonging to the infant. The finding of the referee in regard to this investment is as follows: " III. The first objection is to an investment of $10,000 par value St. Louis & San Francisco

5 per cent bonds, appearing in Schedule A attached to the petition, as an improper investment to be made or continued by the general guardian. The petitioner has explained that these bonds were delivered to him as part of the estate of the infant herein and that market conditions from the date of delivery until the present time have rendered the sale of these bonds imprudent. He has testified that he took expert advice upon this matter and was advised that the bonds could not be sold except at a sacrifice and that the bonds would eventually be worth par value. Interest on the bonds has now been paid to date, and it is expected that their market value will be in the future equal to their par value. In my judgment the petitioner acted in this matter in good faith and his action has been for the best interests of the estate of the infant. The objection to this investment, under all the circumstances, should therefore be dismissed.''

From the testimony of the guardian, who is the father of the infant, it appears that these bonds were among the assets of the estate of Ann Louise Yung, the mother of the infant, and were paid over on June 6, 1912, to the accountant as guardian by himself and Mr. McCabe, who were trustees of that estate, and the guardian has held them ever since. At one time they defaulted in payment of interest, but since then have paid up all interest in full, so that there has been no loss on the income of the investment. The market value of the bonds when they were turned over by the trustees was $8,700. Their market value has been below that since they came into the hands of the guardian, and he testifies that he could have sold them last fall at eighty-three, and at one time he could have sold them at par. At the time of the accounting they were quoted at eighty-two. The guardian testifies that he was advised through friends in the banking business

that they would come out all right in the long run, that the interest was being paid and that they would get around to what he paid for them eventually, because the road is doing a good business; that it is a good paying road.

The special guardian filed an exception to the above finding of the referee, and insists that these bonds should have been disposed of and that the general guardian should be directed to make good the difference between the price at which they could have been sold at the time of their receipt, to wit, $8,700, and the price which he can now receive for them.

While the general guardian undoubtedly acted in this matter in good faith, still the securities above referred to were not of the kind sanctioned by law and he should within a reasonable time have disposed of them.   Dom. Rel. Law, § 85; Decedent Estate Law, § 111; Banking Law, § 146; *Matter of Felice Calabria,* Surr. Decs. 1917, p. 119.   The exception of the special guardian is sustained.   The decree to be made may contain proper provision for the turning over of the securities mentioned to the guardian personally in order that he may use them in realizing the amount of money with which his account is surcharged.

Decreed accordingly.