CLARK *et al. v.* CLARK *et al.*

2

*Callaway & Howard* and *James S. Bussey Jr.,* for plaintiffs.

*Fleming & Fleming* and *Hammond & Kennedy,* for defendants.

HINES, J.   The testator owned a majority of the stock of the Sutherland Manufacturing Company, and 200 shares of the stock of the Enterprise Cotton Mills, of Enterprise, Alabama.   He bequeathed 713 shares of the stock he owned in the former company, and his 200 shares in the latter company, to the defendants in trust for the use of his wife and minor children.   These stocks constitute the principal part of the trust estate.   Testator directed the trustees to pay from the income of the trust estate $400 monthly to his wife and children for their support and the education of his minor children.   The petition states that the defendant Clark claims that in order to secure to the trustees the power to manage and control the Sutherland Manufacturing Company, the testator transferred to him individually 40 shares of the stock of that company, and took therefor his individual note for $6,000, under an arrangement by which Clark was to have and control these 40 shares until the time provided in the will for the distribution of the estate among the beneficiaries of this trust estate, the intention being to enable the trustees to control said company. Immediately upon the probate of the will and the qualification of the defendants as trustees thereunder, the defendants elected themselves to the main salaried offices of the company, electing the defendant Clark as president, at a salary of $6,000 a year, and the defendant Boller as secretary, at a salary of $2,100. a year.   These defendants then took over the management and operation of said mill.   The defendant Clark has continued in the office of president of said company ever since, and the defendant Boller remained in the office of secretary until recently, when he resigned.   The company was doing a prosperous business during the lifetime of the testator, who operated this mill.   Under its operation by the defendants there has been a net operating loss, since the death of testator, of $94,663.30. By reason of the operation of said company by the defendants, the company has ceased to pay dividends, and the wife and children of testator have been deprived of the $400 per month directed to be paid to them by the testator, and are now without sufficient income to support them, or to educate his minor children.   The petition

alleges that the defendants are incompetent and incapable of successfully operating this company, and are profiting by holding positions and drawing salaries for themselves as officers of said company by means of said stock held by them as trustees, and by means of the 40 shares of stock transferred by the testator in the above manner to the defendant Clark. The present proceeding was brought by the beneficiaries to remove these trustees, to charge them with loss arising from the depreciation of these stocks, for an accounting, and for the recovery of illegal commissions charged by them.

The trustees have no personal interest in this trust. They are only entitled to such compensation as the law gives them for their services in properly executing the same. Relatively to removal of a trustee having no interest in the trust, the welfare of the beneficiaries constitutes the chief matter for consideration. Laughlin *v.* Wells Blg. Co., 179 Wis. 56 (190 N. W. 899). "The trustee must not use the trust funds to his own profit." Civil Code, § 3767. It is a fundamental rule that a trustee can make no profit for himself out of the trust estate. This principle is so essential to the honest and proper management of trust property that the trustee is never encouraged to take risks with it for his own aggrandizement. On the contrary, he is restrained from so doing by being compelled, if his venture turns out unfortunately, to account to the beneficiary under the trust for the full value of what is lost. If the venture be successful, he is required to turn over his gain to the beneficiary of the fund embarked in the enterprise. *Caruthers* v. *Corbin,* 38 *Ga.* 75 (5) ; *Roberts* v. *Mansfield,* 38 *Ga.* 452, 458. The current of Georgia policy, both legislative and judicial, runs steadily in one direction and to one point, that is, that no trustee shall have the opportunity or be led into the temptation to make profit out of the business of beneficiaries entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business. *Mayor &c. of Macon* v. *Huff,* 60 *Ga.* 221, 228. Trustees can never be allowed to derive a personal advantage from the use of the trust property. *Rogers* v. *Dickey,* 117 *Ga.* 819 (45 S. E. 71). They can not make a personal profit in dealing with trust property. *Dowling* v. *Feeley,* 72 *Ga.* 557 ; *Dorsett* v. *Garrard,* 85 *Ga.* 734 (11 S. E. 768) ; *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 118 (47 S. E. 639). A testamentary

trustee must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary. Gould v. Gould, 178 N. Y. S. 37 (108 Misc. 42); Pyle v. Pyle, 137 App. Div. 568 (122 N. Y. Supp. 256), affirmed, 199 N. Y. 538 (92 N. E. 1099). As long as the confidential relation lasts, the trustee owes an undivided duty to the beneficiary under the trust, and can not place himself in a position which would subject himself to conflicting duties, or expose him to the temptation of acting contrary to the best interests of the cestui que trustent. 3 Pomeroy's Equity Jurisprudence, § 1077. Beneficiaries of a trust are entitled to have it administered by trustees entirely at the service of the trust and above suspicion. Crummey v. Murray, 224 N. Y. S. 49 (130 Misc. 378). The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed. Munson v. Syracuse &c. Ry. Co., 103 N. Y. 58 (8 N. E. 355); Pyle v. Pyle, supra; Elias v. Schweyer, 40 N. Y. Supp. 906 (17 Misc. 707); 27 Am. & Eng. Enc. Law (1st ed.), 194.

It was and is the duty of the trustees to elect officers of the Sutherland Manufacturing Company who are competent to manage its affairs efficiently. It was the evident purpose of testator to enable them to do so by giving them the voting power of the majority of the stock of the corporation owned by him, consisting of the 713 shares bequeathed to them as trustees for his wife and children, and of the 40 shares transferred to the defendant Clark. The testator did not provide that these trustees should elect themselves to the managing offices of this corporation; but conceding that this was his purpose, he did not contemplate that they should keep

these offices and continue as such trustees, if the time ever arrived when their duties as trustees and their individual interests conflicted. The testator contemplated, as is shown by his will, that the time might arrive when the interest of the beneficiaries of this trust would require that the stock in this company be sold; and to carry out this purpose he fully empowered the trustees to sell this stock, without any order of any court, at public or private sale, without advertisement, and authorized them to reinvest the proceeds as they might see fit. The time had arrived, under the allegations of the petition, when these trustees should determine whether the best interests of the beneficiaries did not require the sale of the stock in this corporation, and its reinvestment in other and non-speculative securities. They are not in position to impartially consider and decide this question. Their duties as trustees and their individual interests conflict. If this stock were sold, the defendants would or might lose their offices in this corporation and the emoluments thereof, which are considerable and substantial. The retention of this stock by the defendants is their only means by which the defendant Clark can be secure of his position of president of the Sutherland Manufacturing Company and its perquisites. These defendants may be possessed of sufficient ability to postpone interest to duty, but by the imperative interdict of the law they are forbidden to incur the hazard of the temptation. Elias *v.* Schweyer, supra. The defendants, by electing themselves to these offices in this company, and by accepting salaries as such, have placed themselves in a position whereby their personal interests may come directly in conflict with, and, to a certain extent, antagonistic to their duties as trustees. It is not necessary to determine that they have acted in bad faith, or that they have received from the corporation sums in excess of what their services were reasonably worth. More than one half of the salaries paid to these defendants as such officers diminished, and more than one half of the salary now paid to the president diminishes, to that extent, what would otherwise have been paid to the beneficiaries of this trust which they represent; and to this extent, at least, they are not in a position so to act that their personal interests do not come in conflict with their duties as such trustees; and the defendant Clark is still in such position. Having placed themselves in such position, and being unable, from personal interest, to

properly discharge their duties as trustees, they ought not to be permitted to act in such fiduciary capacities. Pyle v. Pyle, supra. A trustee's acceptance of a salaried, elective office in a corporation, some of whose stock constitutes a part of the trust estate, has been held a good ground for his removal, because of the possible conflict between his individual interest to retain the stock when the interest of the trust might require the sale of it. Perry on Trusts (6th ed.), §§ 275, 276; Gartside v. Gartside, 113 Mo. 348 (20 S. W. 669); Elias v. Schweyer, supra; Laughlin v. Wells Blg. Co., supra; Overell v. Overell, 78 Cal. App. 251 (248 Pac. 310). There are some cases which take the contrary view; but we are of the opinion that the conclusion reached by us speaks the better law. If a servant can not serve two masters, he certainly can not serve himself and his master in a transaction where his personal interest conflicts with his duties to his master. A trustee who is vested with a discretion to sell corporate stock which is held by him in trust, and which gives him the control in the election of the officers of the corporation, and who has, by virtue of such stock, elected himself president of the corporation with a fat salary, is not in a position to properly determine whether such stock should be sold and reinvested, when the sale of the stock might deprive him of his office and salary, especially when under his management of the corporation there has been a net operating loss amounting to nearly two thirds of the capitalization of the corporation. So we are of the opinion that the allegations of the petition, which are admitted to be true by the demurrer, make a case which would authorize the chancellor to remove these trustees. ·

■ The trustees gave bond as required under the will, with the National Surety Company as surety. They entered into an agreement with the surety company by which they surrendered possession of, and deposited with said company, all of the assets belonging to the trust estate, including the above stocks, and gave to said company joint control with themselves over all of the assets of the trust estate. Doubtless this agreement was entered into to induce the surety company to become the surety on this bond. Plaintiffs allege that this agreement is in violation of the laws of this State, as by this act the trustees put it out of their power to exercise the powers conferred upon them to sell the above stocks, which constitute the chief part of the estate, should it be to the best interest

of the estate to do so. Is this agreement void; and if so, does it furnish a ground for the removal of the trustees? In *Fidelity & Deposit Co.* v. *Butler*, 130 *Ga.* 225 (60 S. E. 851, 16 L. R. A. (N. S.) 994), this court held that an agreement between a guardian and a surety company to the effect that, if such company would become surety on the guardian's bond, the guardian would deposit the ward's funds in some bank of the city of his residence, approved by the surety company, and that no part of these funds were to be withdrawn without the joint check of the guardian and the surety company through its local representative, was contrary to public policy and void. This agreement was condemned upon the ground that the security for the good conduct of the guardian was supplied by the ward's estate itself. In addition to the cases cited in the opinion in that case, there are other decisions and authorities upholding the doctrine stated. Jennings *v.* Smith, 232 Fed. 921 (17); Meck *v.* Behrens, 141 Wash. 676 (252 Pac. 91, 50 A. L. R. 207). Clearly, if such an arrangement or agreement is contrary to public policy and void, it must be so for the reason that its execution amounts to a breach of trust. It follows necessarily that such abnegation by the trustees of their duty to keep in their possession and under their control the trust assets furnishes a ground for their removal.

■ Are these trustees liable to the beneficiaries for losses arising from depreciation in the value of these stocks, for the reason that they should have sold the same and invested the proceeds in securities in which trustees are authorized by our law to invest? These stocks belonged to testator at the time of his death, and passed to the trustees under the general bequest and devise to them of all of his property, both real and personal, in trust for his wife and children until the majority of his youngest child, at which time the trustees are required to distribute the estate among the widow and the children, then living, of testator, share and share alike; and until the time for distribution arrives, the testator directed the trustee to pay to his widow from the income of his estate $400 per month for her support and for the support and education of the children, expressly conferring upon the trustees full power to sell at public or private sale, without any order of court, and without notice or advertisement, any or all of his property, and to invest the proceeds in their discretion, subject to the above uses. The

value of these stocks has declined since the death of the testator and since the defendants began to control and manage this trust estate. Plaintiffs insist that it was the duty of these trustees, within a reasonable time after they qualified, to sell these stocks and invest the proceeds in such securities as they are authorized by law to invest in, or in such securities as they might be authorized to invest by the judge of the superior court having jurisdiction of this trust: and that, having so failed to sell said stocks and reinvest the proceeds, and the same having depreciated in value, they are liable to the beneficiaries for the losses arising from the depreciation in value of said stock.

Under our law, trustees may invest trust funds in any securities issued by this State, in county and municipal bonds which have been duly validated, and in farm-loan bonds issued by Federal Land Banks or Joint Stock Land Banks. Any other investments of trust funds must be made under an order of the judge of the superior court, or else at the risk of the trustees. Civil Code (1910), §§ 3763, 3765; Acts 1918, p. 160; 9 Park's Code Supp. 1922, § 3765(a); Georgia Code, 1926, § 3765(1). The power of a trustee to retain investments received from the creator of the trust is, in the absence of contrary statute or provision in the instrument creating the trust, not different from his power to make investments. In Ashhurst v. Potter, 29 N. J. Eq. 625, 632, Gummere, Master, said: "But it may be said that these executors did not *make* investments, but merely *continued* investments made by the testator, in private stocks. I can not think that this altered their duty or responsibility. At the testator's death they were clothed with full powers to act, and the duty of acting was imposed upon them. They were bound to act, and to invest in public securities or bonds and mortgages. Retaining improper investments was, in effect, *making* them; retention in such cases is a positive *act*; and the fact that the testator had considered these stocks good investments, and had invested in them, can not excuse them for investing in them." In Ward v. Kitchen, 30 N. J. Eq. 31, 35, the chancellor said: "The trust, in respect to all of the daughter's share of the residuary estate, except the $6,000 which were to be at her own disposal, is to invest it in productive funds, upon good securities, and to collect and pay over to her the interest and income thereof, half-yearly, during her natural life. Under this

direction, the trustee would not be at liberty to invest the money in the stocks of banks and manufacturing companies, however exceptionally good, without incurring the responsibility of answering for any loss which might occur to the funds, either in interest or principal, by reason of such investment. If no directions are given in the will as to the conversion and investment of the trust property, the trustee, to be safe, must take care to invest the property in the securities pointed out by the law. Perry on Trusts, § 465; King v. Talbot, 40 N. Y. 76. Nor will the fact that the testator himself made and approved of the investment, in the absence of express or implied directions in the will, relieve the trustee from responsibility in continuing permanently an investment made by the testator which the trustee himself would not be justified in making." In re Burr, 96 N. Y. Supp. 225, 235 (48 Misc. 56), the surrogate said: "Generally speaking, a trustee is not justified, in the absence of some authority in the instrument creating the trust, to the contrary, in continuing an investment formerly made by the testator which they would not be justified themselves in making. Perry, Trusts, §§ 454, 465. It is their duty to convert such stocks into money within a reasonable time after the creation of the trust."

In Wotton v. DeReau, 69 N. Y. Supp. 753, 754 (59 App. Div. 584), the first headnote is as follows: "Where testator owned securities in which an executor was not authorized by law to invest the estate's money, the fact that the testator, prior to her death, wrote the beneficiary under her will that she did not wish the securities changed, and the letter was shown to the executor, did not relieve him from liability for a loss occasioned by his failure to reinvest in proper securities." In the opinion the court said: "It is claimed, however, that although, as an original proposition, a trustee is limited in the power of investment to those securities authorized by law, yet when he finds the investment already made by the testator in interest-bearing securities, he is at liberty in his discretion to continue to hold them. We are not inclined to lay down a hard and fast rule in respect of this matter. When a trustee finds the estate committed to him already invested in interest-bearing securities, we are not inclined to say that it is his absolute duty at once to dispose of them without regard to the market, or the demand for them, or the ruling price, or the prob-

ability of an advance in their value. It is sufficient to say, however, that ordinarily, if a trustee sees fit to continue such investments after he shall have had a reasonable opportunity to sell them without loss, and to invest them in those securities which by law he is authorized to hold, it must be an exceptional case which will justify him in his failure to do so, where, as a result of that failure, there has been a loss." "While a fiduciary may, as a rule, in the exercise of a sound discretion, retain such investments as are proper for fiduciaries to hold, all others he must call in, and invest the proceeds in an authorized manner." 17 Am. & Eng. Enc. Law (1st ed.), 454. In re Voorhees, 3 N. J. L. 211, it was held that there was no distinction between the liability in retaining an investment and in making an original investment, and that an executor who has retained an investment made by a testator in bank stock is personally liable for a loss resulting from a failure of the bank, in the absence of any other reason for continuing the investment. In Gillespie v. Brooks, 2 Redf. (N. Y.) 349, it was held that "If the assets left by the testator consist of stocks of private corporations," testamentary trustees "should sell them and duly invest the fund within the" time "allowed for settling the estate." In Cannon v. Quincy, 121 N. Y. Supp. 753 (65 Misc. 402), the Supreme Court of New York held that "A trustee under a will, in the absence of authority in the will, can not continue an investment formerly made by testator, which he would not be justified himself in making, and hence can not continue an investment of trust funds in railroad or industrial stocks, under Personal Property Law (Laws 1909, c. 45; Consol. Laws, c. 41), § 21, limiting a trustee to investment of trust funds in the same kind of securities as those authorized for savings bank investments, and in bonds and mortgages on unincumbered real property in the State to the extent of 50 per cent. of its value, and Banking Law (Laws 1909, c. 10; Consol. Laws, c. 2), § 146, allowing savings banks to invest their funds in United States bonds, State bonds and stocks, and stocks of certain municipalities and first-mortgage railroad bonds of certain roads."

In re Yung's Estate, 170 N. Y. S. 303 (103 Misc. 358), it was held that "A guardian receiving for himself and another as trustees of the estate of his ward's mother, certain bonds, not of the kind sanctioned by Domestic Relations Law (Consol. Laws, c. 14), §

85, Decedent Estate Law (Consol. Laws, c. 13), § 111, and Banking Law (Consol. Laws, c. 2), § 146, must account for their subsequent loss in value, although he held them in good faith upon expert advice, since he should have disposed of them within a reasonable time." The general rule is, that where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after the payment of debts, expenses of administration, and legacies, to one person for life, with the remainder to others after the termination of the life-estate, the whole property must be converted into money and invested in permanent securities by the executor, and the income only paid to the legatee for life. But if it can be gathered from the will that the testator intended that such legatee for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property thus specifically bequeathed, although the bequest be made in general terms, and without any particular designation of the property. The authorities, both in England and this country, which assert this doctrine are very numerous, and the law as here stated is well settled." Golder v. Littlejohn, 30 Wis. 344, 351. "A testamentary trustee can not, in the absence of authority from the testator, at the request of the life-tenant, retain investments left by testator in business enterprises which are not legal investments for trust funds under the laws of the State." Re Leitsch, 185 Wis. 257 (201 N. W. 284, 37 A. L. R. 547). "Ordinarily, a trustee has no right to retain beyond a reasonable period investments made by his decedent in unauthorized securities, unless expressly empowered to do so, or he justifies such retention by proof of the exercise of normal good judgment." Re Taylor's Estate, 277 Pa. 518 (121 Atl. 310, 37 A. L. R. 553). In Toronto General Trust Co. v. Chicago &c. R. Co., 18 N. Y. S. 593 (64 Hun, 1), the court held: "The rule in England and in this State which forbids a trustee to invest trust funds in the securities of railroads and other corporations is a most salutary one; and we think the rule is or ought to be that a trustee who receives trust property invested in such securities should, if he is not required to sell the same, at any rate have the right to make such a sale and invest the proceeds in the same manner that he would be required to do if the trust property received by him consisted of money." In Babbitt v. Fidelity Trust Co., 72 N. J. Eq. 745 (66 Atl. 1076),

this ruling was made: "Where a person transferred all his property to a trustee to hold as a trust fund, it was a general trust; and if the trustee held stock which came to him from the settlor, and which were not securities he was authorized by law to hold, he should be surcharged with the difference between the market value of the stock at the time he should have sold it, and the lower price at which it subsequently sold."

Where a testator gives direction in his will to continue his investments already made, trustees must follow such directions; and if they follow them in good faith, they will not be liable for any losses, unless they are negligent in failing to change an investment when it ought to be changed to save it. The direction of a testator to continue a certain investment does not relieve the trustee from the ordinary duty of watching such investment and of calling it in when there is imminent danger of its loss by change of circumstances. If no directions are given in the will as to the conversion of an investment of the trust property, trustees, to be safe, should take care to invest the property in securities pointed out by the law. While a testator during life may deal with his property according to his pleasure, and investments made by him are some evidence that he had confidence in that class of investments, yet, in the absence of directions in the will, it is more reasonable to suppose that the testator intended that his trustee should act according to law. So, in States where the investments which trustees may make are pointed out by law, the fact that the testator had invested his property in certain stocks would not authorize the trustees to continue such investments beyond a reasonable time for conversion and investment in legal securities. In States where there are fixed funds or securities in which trustees shall invest, the fact that a testator has invested his property in particular stocks of corporations or other securities, thus indicating his confidence in such investments, will go far to justify the trustees in continuing them. Harvard College v. Amory, 9 Pick. (Mass.) 446; Peckham v. Newton, 15 R. I. 321 (4 Atl. 758). "Where there is no statute law or rule of court which points out any particular classes of securities for the investment of trust funds, the fact that securities were bought and held by the testator commends them for retention so long as there is no doubt of their safety. But where the investment is not such as is recognized by the rules of

law applicable thereto, the trustee should sell and reinvest in accordance with such rules, and the fact that the testator himself made and approved of the investment will not relieve the trustee from responsibility for retaining it." 39 Cyc. 409 (h).

After a careful consideration of the authorities bearing upon this subject, and in view of the importance of safeguarding trust funds, we think Perry, in his work on Trusts and Trustees (6th ed.), § 465, has properly stated the applicable principle, as follows: "Taking all the cases together, it would appear to be a settled principle that trustees are not justified, in the absence of express or implied directions in the will, in continuing an investment permanently, made by the testator, which they would not be justified themselves in making." Where trustees are authorized to continue investments made by the creator of the trust, they must exercise reasonable prudence in watching the trust, and they must make changes in investments whenever it appears that it is necessary so to do. Babbitt *v.* Fidelity Trust Co., supra. We deem the safe and better rule to be that trustees who receive investments made by the creator of a trust, not in securities authorized by our law, should, in the absence of directions to retain them, dispose of such securities, and invest the proceeds in such other securities as are authorized by our law. If they do not take this course, then, to relieve themselves of the liability for a loss, they should submit the matter of the continuance of such investments to the judge of the superior court, and procure an order for the retention of such securities, if the judge deems it wise and prudent and to the best interests of the beneficiaries that the investments should remain as made by the creator of the trust. The authorities upon this subject are not harmonious. "When the trustee is not so authorized by the instrument creating the trust, it is the rule in some jurisdictions that he has no authority to continue beyond a reasonable time investments made by the creator of the trust in private corporate stock; but where the testator by his will directs the executors or trustees to continue his stock investments, they may properly do so. In other jurisdictions the rule is that where the trustee retains an investment in private corporate stock, acting in good faith and exercising a sound discretion, he is not responsible for depreciation in the value of the stock." 26 R. C. L. 1311, § 165; 16 Ann. Cas. 72; Jones *v.* Jones, 19 N. Y. S. R. 436 (50 Hun, 603, 2 N. Y. Supp. 844); Stewart's Appeal, 110 Pa. 410 (6 Atl. 321).

The wisdom of the rule we adopt is demonstrated by the facts of this case. Testator created a trust for the support of his wife and for the support and education of his children. The principal part of the trust estate consists of stocks in two cotton mills owned by testator at the time of his death. They have not been productive of dividends since his death. The beneficiaries are not receiving any income therefrom. This has gone on for a number of years. If the trustees had converted this stock, and invested the proceeds in legal investments, there would have been an income therefrom for the support of the widow and the support and education of the minor children; and the purpose of the testator in creating this trust would have been realized. As the question is an open one in this State, we deem it wise to adopt the rule which requires trustees, in the absence of direction, either express or implied, in the instrument creating the trust, to dispose of speculative securities, although the investment was made by the maker of the trust, and such securities came into their hands as a part of the trust estate, and to invest the proceeds in securities authorized by the statutes of this state. This rule is in harmony with the public policy of the State as disclosed by our statutes which fix the securities in which trustees can invest trust funds.

■ Does the testator in his will give directions, either express or implied, to his trustees, to retain these stocks? He does not specifically bequeath these stocks to the defendants in trust for the named beneficiaries. It is a general trust. It can not be contended that there is any express direction given by the testator in his will to the trustees to retain these stocks. Is such direction implied? Under the will the trustees are required, upon the arrival of the youngest child at age, to distribute the property, bequeathed and devised by the testator to the trustees, between the widow and children living at that time. Testator confers upon the trustees and their successors full power to sell at public or private sale, without the order of any court, or advertisement, any or all of his property, and to invest the proceeds, in their discretion, subject to the uses above set out. These are the only pertinent portions of the will which bear upon this question. It can not fairly be held that the testator directed the trustees to hold the identical property bequeathed and devised until the youngest child arrived at age, and at that time distribute

the property in specie among the beneficiaries. He specifically gives to the trustees, in their discretion, the power to sell any or all of this property, and reinvest the proceeds for the use of the beneficiaries of the trust. This provision, instead of indicating a direction to retain the securities in which the testator had invested, and which were devised to these trustees under the will, shows that the testator did not give such directions, but contemplated a change in the investments which he had made. Where trustees rely on the authority in the will to invest the estate in non-legal securities, or to retain non-legal securities, such authority must clearly appear. It has been said that such authority must be established with the utmost clearness. In re Barker's Estate, 159 Pa. 518, 528, 529 (28 Atl. 367); In re Taylors Estate, supra. The provision of the will conferring upon the trustees the power to sell any or all of the trust estate, and invest the proceeds, in their discretion, only authorized the trustees to deal with the trust property subject to those rules which govern trustees. The discretion vested in the trustees was not to do unauthorized things, but to exercise their judgment concerning the things which they were authorized to do. Babbitt *v.* Fidelity Trust Co., supra. The discretion vested in the trustees was one "enlightened and guided by the approved rules applicable to the investment of trust funds." It must be assumed that the testator inserted this provision in his will having reference to the well-known legal and equitable rules governing trustees in the management and investment of trust funds. Mattocks *v.* Moulton, 84 Me. 545 (24 Atl. 1004). So we are of the opinion that the testator did not direct or authorize these trustees to retain these stocks; but that it was the duty of the trustees, within a reasonable time, to convert them and put them in securities authorized by our laws governing the investment of trust funds.

■ But it is insisted that the testator expressly confers upon the trustees or their successors the "power to borrow money when necessary, in their opinion, for the benefit or protection of the trust estate, and to mortgage the property of the trust estate, or to pledge the fee-simple title thereof to secure the same, so borrowed by them, and without the order or sanction of any court." The authority of these trustees to invest the trust funds in non-legal securities, or to retain investments made in such securities

by the testator, can not be deduced from this provision of the will. This provision does not show that the testator intended that the trustees should retain these corporate stocks; and even if such had been his intention, the trustees would not be authorized to keep them until these stocks became worthless. It must be borne in mind that the purpose of this trust was to provide for the support of testator's widow and the support and education of his children; and it should be so managed as to effect this paramount purpose.

■ The defendants demurred specially to the paragraphs of the petition relating to the 40 shares of stock transferred by testator to the defendant Clark, and to the paragraph of the prayer for a decree requiring this defendant to transfer to the trustees these shares of stock, upon the ground that there was no allegation which would justify the court in granting this relief, and because the time for returning the stock to the estate and for the surrender of the note of this defendant, fixed by the will, had not arrived, and because there is no denial that the interest on the note had been paid. If these shares of stock belonged to the trust estate, and if the defendants are removed as trustees, then the defendant Clark would have no further right to hold the same, and they should be returned to the trustees of the estate. The will does not fix any time for returning the stock to the estate, but does provide for the distribution of the trust property among the beneficiaries when the youngest child of testator arrives at majority. If the defendant Clark is removed as a trustee, then he would have no further right to hold and control these shares. In such event, the purpose for which they were entrusted to him would cease, and with the cessation of such purpose his right to hold this part of the trust estate would end.

■ The defendants demur specially to that portion of the petition in which it is charged that the defendants are incompetent and incapable of successfully operating these cotton mills, upon the grounds (a) that testator showed by his will that he had the utmost confidence in their competency and capacity, and he is better qualified to judge of said matter than the plaintiffs; (b) because no single act of dishonesty, neglect, or mismanagement is specified; (c) because it necessarily follows from the allegations of the petition that the defendants owned or represented, in some

capacity other than as trustees under the will of testator, more than one half of the stock of Sutherland Manufacturing Company, and that they have every incentive of personal interest to make a financial success of the operation of the mill; and (d) because there is no allegation that the stock of this particular mill suffered any greater decline than other similar mills in the general depreciation of the textile industry during the years from 1921 to 1926. None of these grounds furnish reason for striking the above portions of the petition, and the above paragraph of the prayer.

■ The defendants demurred specially to that portion of the petition in which it is alleged that the defendant Clark fixed his salary at $6,000 per annum, because it does not justify the inference that in doing so he acted against the best interests of the estate, there being no allegation that his salary was excessive, or that it was an increase over the salary drawn by the testator in his lifetime, or that it increased the overhead expense in the way of official salaries. This allegation was not made upon the theory that this defendant was drawing an excessive salary, and for that reason indirectly deprived the trust estate of any income from the shares of stock held in this company by the trustees. The purpose of the allegation was to show that this defendant had put himself in a position where his self-interest might prevent him from changing this investment, when it was to the best interests of the beneficiaries that it should be changed; and that, having placed himself in a position where he could not fairly and properly represent both the interests of the trust estate and himself in these matters, he should be removed as trustee. For this reason this ground of special demurrer is not well taken.

■ The defendants demurred specially to the allegations as to the agreement with the National Surety Company, and to the charge that the defendants had charged excessive commissions, because the plaintiffs have a complete remedy at law in the court of ordinary. Trusts of every kind, not generally cognizable at law, are peculiar subjects of equity jurisdiction. Civil Code, § 3779. If the trustee omits to act when required by duty to do so, or is wanting in necessary care and diligence in the due execution of the trust which he has undertaken, a court of equity will interpose. *Jones* v. *Dougherty,* 10 *Ga.* 273. The relief granted, in cases of trust, will always be so molded and framed as to render

the trust effectual, and secure the best interests of all parties. Civil Code, § 3783. To preserve a trust estate, to supervise its management, to hold the trustee to the line of duty, for the purpose of preserving its corpus for the benefit of the beneficiaries, is an elementary branch of equity jurisprudence. *Johns* v. *Johns,* 23 *Ga.* 31; *Knight* v. *Knight,* 75 *Ga.* 386 (3). The judge of the superior court of each county has power, either in term or at chambers, to remove and appoint trustees. Civil Code, § 3744. When a court of equity obtains jurisdiction for one purpose, it will proceed to give full relief to all parties with reference to the subject-matter of the suit, where it has jurisdiction for that purpose. § 4522. In this case the court, upon a petition filed to remove trustees and for an accounting, could properly require the trustees to account for illegal commissions charged by them.

■ The other grounds of special demurrer are without merit.

■ Applying the principles above ruled, the court erred in sustaining the demurrer to the petition.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., and ATKINSON, J., who dissent from the ruling in paragraph (*a*) under the third headnote, but concur in the other rulings.

HILL, J., concurs in the result.

ATKINSON, J. Where a trust is created in specific property and the instrument creating the trust does not confer a power of sale upon the trustee, the trustee can not sell without an order of court. Civil Code (1910), § 3755. The trustee is bound to ordinary diligence for protection or preservation of the property in his hands. § 3753. Negligence of a trustee acting for a reward, which results in injury, will give a right of action against the trustee. § 4463. Prima facie a trustee who is not expressly or impliedly otherwise directed in the instrument creating the trust has the right to continue to hold the specific property. Ordinarily whether trustees with powers as were conferred upon the defendants in this case would be liable in damages for mere failure to sell the property under order of court for reinvestment would depend on whether, under the facts of the case, ordinary diligence required them to take such action. They would not be bound, at the hazard of paying damages, to sell the property for

reinvestment on account of mere lapse of time. The above sections of the code have the force in this State of statute law, and can not be disregarded. These views require dissent from the ruling stated in subdivision (*a*) of the third headnote and corresponding division of the opinion. The opinion of the majority is concurred in except in so far as it conflicts with the foregoing views. Beck, P. J., concurs in the foregoing dissent.