46715, 46728. HANSON et al. v. FIRST STATE BANK & TRUST COMPANY; and vice versa.
(385 SE2d 266)

WELTNER, Justice.

This case concerns a longstanding dispute between the beneficiaries under a trust and the trustee bank.

### Factual Background

1. (a) Under the will of Marjorie Haley Scherberger, the First State Bank & Trust Company was appointed executor and trustee of trusts created for each of her four children. At the time of her death in 1971, her father's estate had been distributed. Her brother, Herbert Haley, managed a partnership formed for the operation of several family farms and was active in other family businesses. Haley was also chairman of the board of directors of the First State Bank & Trust Company, and chairman of its executive and finance committees. He controlled a substantial percentage of the bank's shares.[1]

(b) Becoming dissatisfied with the management of their trusts, the beneficiaries sought to remove the bank as trustee, to recover

---

[1] The trial court found: "Herbert Haley owns 25 to 30% of the stock of First State Bank & Trust Company and the W. B. Haley family ownership is about 45 to 50%."

damages, and to obtain other relief.

2. Except for a single transaction, the trial court concluded that the beneficiaries failed to carry the burden of proving that the bank had committed any breach of trust. However, the court ordered the removal of the trustee; awarded the beneficiaries damages of $2,775; refused termination fees to the bank; and ordered an accounting for certain such fees already paid. Both parties appeal.[2]

3. (a) The beneficiaries' principal contention is that the trustee bank breached its fiduciary duty to them because Haley's duality of functions created on the part of the trustee bank a series of conflicts of interest.

(b) The bank's principal contention is that the trial court erred in removing it as trustee, insisting that in order to remove a trustee there must be a legal cause; that the court specified no such cause; and that the findings of fact do not support the judgment.

*Removal of Trustee*

4. The parties acknowledge the precepts enunciated in *Clark v. Clark*, 167 Ga. 1, 4-5 (144 SE 787) (1928). They disagree as to their application to the circumstances of this case.

*Clark* holds:

A testamentary trustee must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary. . . . The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed.

---

[2] See *Hanson v. First State Bank & Trust*, 254 Ga. 235 (327 SE2d 730) (1985), for prior procedural rulings in this case.

5. (a) The bank insists that if any conflict between Haley and the trusts exists, it cannot be attributed to the bank because it is the bank, and not Haley, that is the trustee.

(b) To reiterate, Haley was chairman and major shareholder of the bank, and at the same time was managing partner in the family enterprises that the trustee bank held on behalf of the beneficiaries.[3] As a corporate entity, the trustee bank of necessity must be controlled by the human agents who act on its behalf. In this contention, see OCGA § 23-2-59, as follows:

> Where, by the act or consent of parties or the act of a third person or of the law, one person is placed in such relation to another that he becomes interested for him or with him in any subject or property, he is prohibited from acquiring rights in that subject or property which are antagonistic to the person with whose interest he has become associated.

(c) Here, the conduct of the corporate trustee is dominated so totally by Haley that, by the fact of that domination, the trustee bank was precluded from maintaining a "position where . . . every act is above suspicion" (*Clark,* supra). In such a case, the conflicts of interest between the bank's human agent and the trusts of which it is trustee must be attributed to the bank itself.[4] Were it not so, the clever manipulation of corporate structure could result in the validation of a myriad of transactions that otherwise would be proscribed.[5]

---

[3] The trial court made findings of fact relative to the family enterprises and the management of the trust. These findings are summarized in the Appendix, below.

[4] Equity abhors mere names, and looks to the substance. Whether the corporation be treated as an enlarged and amplified form of partnership and the director as managing partner, or whether he is called an agent or trustee elected by the stockholders to represent them in the management of the concern, he occupies a fiduciary position, and is essentially within the rule which requires agents, attorneys, bailees, partners, trustees, or other fiduciaries to exercise the highest degree of good faith as to all matters connected with the property committed to their care. [*Oliver v. Oliver,* 118 Ga. 362, 369-70 (45 SE 232) (1903).]

[5] Consider also these authorities:

1. Scott, The Law Of Trusts, § 170.6 (4th ed.): "A trustee violates his duty to the beneficiaries not only where he acts *as* an adverse party, but also where he acts *for* an adverse party. A trustee having a power to sell trust property cannot properly purchase it on behalf of a third person."

2. Scott, supra, § 170.11: "A corporate trustee violates its duty if it sells trust property to one of its officers or directors."

3. Restatement of the Law Second, Trusts, § 170:

A corporate trustee cannot properly sell trust property to one of its officers or directors. So also, it cannot properly sell trust property to another corporation where the directors are the same, or where so many of the directors of the two corporations are the same that there would be a substantial temptation to consider the advantage of the purchasing corporation rather than that of the beneficiaries of the trust. In such a case application may be made to the court for permission to make the sale.

(d) Under the principles of *Lovett v. Peavy*, 253 Ga. 79, 81 (316 SE2d 754) (1984), the trial court did not err in removing the bank as trustee.[6] That removal results not from Haley's relationship with the beneficiaries of the trusts or with the settlor of the trusts, but rather as a result of his dealings with the *trustee*. The same result would have been reached had Haley been a total stranger to the trusts (as distinguished from the *trustee* of the trusts), its settlor or its beneficiaries. The conflict of interest arises from the control of the bank by Haley, when conjoined with his dealings on his own account with the bank as trustee. In simplest terms, this is a case of prohibited "self-dealing" by Haley, who, because of his control over the bank, is the virtual or *de facto* trustee, and, at the same time, has engaged in extensive dealings on his own account with the trust.

### Remedies

6. The beneficiaries contend that they are entitled to judgment as a matter of law for the total amount of trustee fees, for interest paid to the bank on loans made by the bank to the trust, for the amount of rent paid by the bank to itself under a lease, and for recovery of all fees and profits that certain companies have realized from their dealings that affect the trusts.

7. The following authorities govern these contentions:

---

4. Uniform Trusts Act § 5: "No trustee shall directly or indirectly buy or sell any property for the trust from or to itself or an affiliate; or from or to a director, officer, or employee of such trustee or of an affiliate; or from or to a relative, employer, partner, or other business associate."

5. Scott, supra, § 170.13: "A corporate trustee cannot properly purchase property for a trust from one of its officers or directors. The same principle is applicable as in the case where it sells trust property to one of its officers or directors."

6. Scott, supra, § 170.23A:

A further problem has become pressing since the courts have recognized the principle that a fiduciary should not take advantage of inside information, nor should one to whom that information is communicated. A bank may acquire such information when one of its directors is also a director of a corporation whose securities are held in its trusts, or when confidential information is acquired by dealings of the commercial department with such a corporation.
6

In determining whether a trustee should be removed the primary question is whether the trustee's continuance in office would be detrimental to the proper administration and best interests of the trust. . . . A few of the many possible grounds for the removal of a trustee are his legal incapacity, his commission of breaches of trust or of conduct sufficient to show his unfitness to administer the trust, his mismanagement of trust property, and his acquisition of an interest conflicting with that of his beneficiaries. . . . An important consideration in determining whether a trustee should be removed is whether the trustee was appointed by the settlor or by a court or some third party, as courts are more reluctant to remove a trustee who has been appointed by the settlor. [Id. p. 81.]

(a) A trustee shall not use trust funds to his own profit. He shall be liable to account for all such profits made. [OCGA § 53-13-84.]

(b) The agent shall not make a personal profit from his principal's property; for all such he is bound to account. [OCGA § 10-6-25.]

(c) No trustee is allowed to convert the trust property to his own use and account for it at the appraised value; in such cases, he shall account for its true value. [OCGA § 53-13-85.]

(d) Trustees having possession of the trust property are bound to exercise ordinary diligence in the preservation and protection of the same. [OCGA § 53-13-51.]

(e) The principles stated in *Perdue v. McKenzie*, 194 Ga. 356 (21 SE2d 705) (1942).[7]

8. The trial court found as a conflict of interest only the one instance in which the bank (as opposed to Haley) had an ownership interest in a transaction that it undertook as trustee on behalf of the beneficiaries. As we have shown, however, conflicts between Haley's individual interests and the interests of the trust are attributable, where trust assets are involved, to the bank as trustee. See Division 5, above.

---

[7] The rule as to the use of property being administered by one who acts as executor for the use and benefit of another was stated in *Rogers v. Dickey*, 117 Ga. 819 (4) (45 SE 71) [1903] as follows: "If trustees use trust funds in a manner not authorized by law, they assume all the risks of the venture, and must bear all losses; but, being prohibited from making personal gain out of the property of the beneficiaries, they are chargeable with all profits and increase arising from the irregular or illegal venture." And, as there stated, this rule was adhered to and again applied in *Clark v. Clark*, 167 Ga. 1, 4 (144 SE 787), where it was said: "It is a fundamental rule that a trustee can make no profit for himself out of the trust estate. This principle is so essential to the honest and proper management of trust property that the trustee is never encouraged to take risks with it for his own aggrandizement. On the contrary, he is restrained from so doing by being compelled, if his venture turns out unfortunately, to account to the beneficiary under the trust for the full value of what is lost. If the venture be successful, he is required to turn over his gain to the beneficiary of the fund embarked in the enterprise. *Caruthers v. Corbin*, 38 Ga. 75 (5) [1868]; *Roberts v. Mansfield*, 38 Ga. 452, 458 [1868]. The current of Georgia policy, both legislative and judicial, runs steadily in one direction and to one point, that is, that no trustee shall have the opportunity or be led into the temptation to make profit out of the business of beneficiaries entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business. *Mayor &c. of Macon v. Huff*, 60 Ga. 221, 228 [1878]. Trustees can never be allowed to derive a personal advantage from the use of the trust property." [Id. at 368.]

9. The trial court granted the bank's motion for directed verdict on the issue of damages. That judgment must be vacated, pursuant to the holdings of Divisions 5 and 7, above.

### Remaining Enumerations of Error

10. (a) The beneficiaries contend that it was error to exclude as irrelevant evidence of the amount of the salaries paid to Haley from businesses controlled by the bank. This may be relevant to the determinations to be made on remand, as discussed in Division 11, below.

(b) The beneficiaries contend that the denial of their motion *in limine* and the subsequent admission of evidence relating to income to and distributions from trusts was error. This ruling is not error in light of our holdings, although the fairness of the transactions is not determinative of the conflict issue. See Division 4, above.

(c) The beneficiaries contend that the exclusion as irrelevant of evidence of a conversation between Haley and the beneficiaries' father was error. They contend that the conversation reveals Haley's attitude toward the beneficiaries, which demonstrates a lack of good faith. Because of the holdings in this case, there was no error.

(d) The beneficiaries contend that the trial judge erred in altering the amount of the judgment. This contention is mooted by our holdings.

(e) The bank contends that the trial court should have approved the exchange of lots, or should have denied to the beneficiaries any recovery of a portion of the sales price. There was no error.

### Conclusion

11. Accordingly, the case is remanded to the trial court for the purpose of (a) determining conflicts between the interests of Haley and the interests of the beneficiaries in accordance with the principles of law enunciated in Division 5, above; and (b) determining damages consistently with the principles of law discussed in Division 7, above.

*Judgment affirmed in part, reversed in part, and case remanded. All the Justices concur, except Marshall, C. J., not participating.*

### Appendix.

We set out below a brief summary of the factual findings of the trial court. Upon remand, the trial court will determine whether or not these circumstances — or any others — constitute conflicts of interest.

1. The beneficiaries' trusts were partners in Estate Farms, of which Haley was the managing partner.

2. Under Haley's auspices, Henry Goodyear was elected to the board of directors of the bank and became a member of the trust committee. Goodyear, an agronomist, was a principal owner and officer of Plantation Services and Nut Tree. Haley employed Plantation Services as a consultant to the farms and marketed Estate Farms' pecans through Nut Tree and peanuts through South Georgia Warehouse. (Plantation Services was the general partner of South Georgia Warehouse and Haley was a limited partner). Nut Tree took out loans at the bank, and used the Estate Farms' pecans as collateral.

3. The bank as executor of Marjorie Scherberger's estate sold shares of the Thronateeska Corporation, of which Haley was a shareholder, to Scherberger's sister for $1.00 a share, so that the corporation could continue to qualify as a Subchapter S Corporation.

4. The bank held a one-half undivided interest in the Kaufman Farm under the will of Banks Haley as trustee for his wife (the other one-half interest being in a trust management arrangement with a charitable foundation). The bank leased Kaufman Farm to the Estate Farms partnerships.

5. Scherberger owned stock in Gray Communications, which owned all of the stock of Gray Cablevision, Inc. After her death, the FCC required that Gray Communications distribute the Cablevision stock to its shareholders. The beneficiaries' trusts received some of these shares. The bank received calls from local brokers with offers to purchase shares and sold the beneficiaries' shares for an average of $1.39 a share. Meanwhile a sale was being negotiated with Storer Cablevision Company for Cablevision shares for $5 a share. Haley was a director of Gray Communications and he sold his shares to Storer for $5 per share.

6. The bank failed to comply promptly with the request of two beneficiaries for financial statements of Coca-Cola bottling companies, which were family businesses, at the direction of Haley, who was the chief executive officer of the companies. Thereafter Haley did place certain statements with the trust department for inspection and review and began to furnish financial statements.

7. The bank denied the beneficiaries the right to vote the bank shares held in their trusts and to file a dissent, and refused to file a dissent on behalf of the trust to a merger of the bank in a reorganization proceeding. (This dispute was later resolved when the reorganization failed to materialize.)

8. The bank provided funds to meet some requests of the beneficiaries by entering into loan transactions with itself. The bank received substantial reserves of accumulated income from the trust partnership, which Haley had placed in certificates of deposit issued by the bank. The reserves remained undistributed to the beneficial owners (the beneficiaries), necessitating their borrowing funds, at in-

terest, from the bank.

9. The bank proposed to sell 50 acres of the Redfern Farm, of which it was trustee, to the local YMCA, without prior court approval, in order to repay the bank for loans made to the estate for the payment of estate taxes.

10. The bank leased a vacant lot on a month-to-month basis to Albany Lincoln-Mercury Company. The vacant lot was owned by the trusts, Haley, and other family members. Haley was a substantial owner and officer of the lessee Company.

11. The bank transferred the interest of the trust (along with the interest of others) in two 5-acre lots in United Farms to the bank in exchange for five 5-acre lots. The trial court found this transfer to be a conflict of interest.

12. For appraising the real estate of the estate for estate tax purposes, the bank paid an appraisal fee to Plantation Services, which was the corporation of which Henry Goodyear, a director of the bank, was a substantial shareholder and officer.

DECIDED OCTOBER 19, 1989 —
RECONSIDERATIONS DENIED NOVEMBER 30, 1989 AND DECEMBER 20, 1989.

*Alston & Bird, Jay D. Bennett,* for appellants.
*Perry, Walters & Lippitt, H. Holcombe Perry, Jr., Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs,* for appellee.
*Long, Aldridge & Norman, W. Stell Huie,* amicus curiae.